UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11385 JLT

| |
|---|
| D'ANN Plaintiff <u>Plaintiff</u> <br><br> v. <br><br> CITY OF BOSTON and CHRISTOPHER SGT. HAMILTON <u>Defendants</u> |

## DEFENDANTS, CITY OF BOSTON AND SERGEANT CHRISTOPHER HAMILTON'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Defendants, City of Boston (the "City") and Sgt. Christopher Hamilton ("Sgt. Hamilton") incorporate by reference the facts set forth in the attached <u>The City of Boston and Sgt. Christopher Sgt. Hamilton's Statement of Undisputed Facts</u>. Plaintiff, D'Ann McGill ("Plaintiff") filed suit against Sgt. Hamilton and the City wherein she alleges against Sgt. Hamilton: Count I, Assault & Battery; Count II, Massachusetts Civil Rights Claim; Count IV, Violations of 42 U.S.C. § 1983 by excessive force, illegal arrest; and sex discrimination; and against the City: Count III c. 258, §2 for sex discrimination; and Count V Violations of 42 U.S.C. § 1983. Sgt. Hamilton and the City move this Court to enter summary judgment on all counts.

**ARGUMENT**

I.  **SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(b), "[a] party against whom a claim…is asserted…may,… move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." If the defendant's "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact," the defendant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Pure Distrib., Inc. v. Baker, 258 F.3d 150 (1st Cir. 2002). Summary judgment is appropriate when plaintiff fails to show sufficient evidence to establish an essential element of his case. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991), quoting Celotex, 477 U.S. at 325. The Plaintiff cannot adduce specific facts establishing one issue that is both genuine and material and the City and Sgt. Hamilton are entitled to judgment as a matter of law.

II.  **SGT. HAMILTON IS ENTITLED TO SUMMARY JUDGMENT ON ALL THE CLAIMS AGAINST HIM AS THEY DO NOT STATE CONSTITUTIONAL VIOLATIONS AND/OR HE IS ENTITLED TO QUALIFIED IMMUNITY**

  A.  **Plaintiff's Claims of Illegal Arrest, Excessive Force, and Sex Discrimination Should be Dismissed as a Matter of Law Because Sgt. Hamilton Did Not Violate Plaintiff's Constitutional Rights.**

In Count IV, Plaintiff alleges that Sgt. Hamilton violated her civil rights by arresting her without probable cause in violation of the Fifth and Fourth Amendments, used excessive force in arresting her, and discriminated against her based on her sex in violation of the equal protection clause of the Fourteenth Amendment. Plaintiff's Complaint,¶¶ 32-35.

2

Sgt. Hamilton moves this Court to enter summary judgment on these claims as he had probable cause to arrest Plaintiff based upon a statement of the alleged victim, Mr. Kevin Wells ("Mr. Wells"). Further, Sgt. Hamilton handcuffing the plaintiff is not excessive force. The alleged statement that Sgt. Hamilton called Plaintiff "a bitch" does not make out an equal protection claim, and Plaintiff has no evidence to support her claim that Sgt. Hamilton would have treated a similarly situated male differently.

### i. Illegal Arrest

Because Sgt. Hamilton had probable cause to believe that the Plaintiff had stolen money from a witness, Mr. Kevin Wells, Sgt. Hamilton's arrest of Plaintiff was legal and not in violation of her constitutional rights. Plaintiff's Complaint ¶¶ 32-34.

The Fourth Amendment of the United States Constitution protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Fourth Amend. Arrests made by police officers constitute seizures of the person under the Fourth Amendment. Robbins v. California, 453 U.S. 420, 451 (1981). Thus the standard governing unreasonable seizures, "potentially applies to every arrest." Id. To determine whether a seizure is unreasonable under the Fourth Amendment, the reasonableness test asserted in Graham v. Connor must be applied. "The validity of the claim must then be judged by reference to the specific Constitutional standard that governs that right." Graham v. Connor, 490 U.S. 386, 394 (1989). Here, the Plaintiff was only unreasonably seized if there was no probable cause for her arrest, as probable cause is the standard that must be observed in warrantless arrests. See Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).[1] An arrest is deemed "objectively reasonable unless there clearly was no probable cause at the time

---

[1] Under Massachusetts law a police officer is permitted to arrest an individual without a warrant for larceny. G.L. c.276, § 28.

3

the arrest was made." Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999),quoting Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993). An investigatory stop does not need to be supported by probable cause, but is justified if the police officer has more than an "'inarticulate hunch'" and it is "'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Fornia-Castillo, 408 F.3d 52, 63, fn. 19 (1st Cir. 2005), quoting Terry v. Ohio, 392 U.S. 1, 22 (1968).[2]

Probable cause exists "'when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators.'" Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004) quoting Acosta 386 F.3d at 9. The proof is judged by an objective standard and it must be found to give rise to a reasonable likelihood that the putative arrestee committed the suspected crime. Cox, 391 F.3d at 31. A credible victim's statement of a crime may serve as a basis for probable cause to arrest. White v. Town of Marblehead, 989 F. Supp. 345, 349-350 (D. Mass. 1997). Probable cause is a relatively low threshold. White, 989 F. Supp. at 349. Probable cause to arrest "does not require the officers' conclusion to be ironclad, or even highly probable. . . . [It] need only be reasonable." Cox, 391 F.3d at 32 quoting United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). A reasonable police officer does not have to credit the suspect's version of events. Id. at 32, fn. 2. An officer may draw upon his "experience and

---

[2] Police officers are also permitted to use handcuffs or some other restraint during an investigatory stop if there is a "specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm." Flowers v. Fiore, 359 F.3d 24, 30 (1st Cir. 2004) quoting United States v. Acosta-Colon, 157 F.3d 9, 18-19 (1st Cir. 1998). Here, the facts and circumstances that warranted Sgt. Hamilton in placing handcuffs on the Plaintiff were that he had stopped two individuals who had been fighting and he was the only police officer making the stop in the Chinatown area of Boston at approximately 2:30 a.m.. The use of handcuffs in these circumstances is "reasonable because the governmental interests [officer safety] outweigh the marginal intrusion." Muelher v. Mena, 544 U.S. 93, 98-99 (2005).

specialized training to make inferences from and deductions about the cumulative information available to [him]." Cox, 391 F.3d at at 32, quoting United States v. Arvizu, 534 U.S. 266, 273 (2002).

The existence of probable cause depends on a totality of the circumstances, and focuses on what the police knew at the time of the arrest. United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006). If probable cause to arrest exists, then there is no constitutional violation. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996).

Here, there was probable cause to arrest Plaintiff. At about 2:30 a.m. in the Chinatown section of Boston, Sgt. Hamilton saw Plaintiff running away from Mr. Wells who was yelling that she had taken his money. Facts ¶¶ 1-4.[3] Sgt. Hamilton called out to Plaintiff to stop by using her alias, Sadie Heaston. Id. at ¶19. Sgt. Hamilton interviewed Mr. Wells. Mr. Wells told Sgt. Hamilton that Plaintiff had taken his money when she "felt him up all over his body." Id. at ¶¶12-13. Mr.Wells told Sgt. Hamilton that Plaintiff had taken his money about forty-five (45) minutes earlier. Id. at ¶14. Sgt. Hamilton knew Plaintiff because he had arrested her before for prostitution and let her go on hundreds of occasions without arresting her. Id. at ¶¶ 16-17. Sgt. Hamilton knew that the Plaintiff had stolen money from men before. Facts, ¶¶19, 21. Sgt. Hamilton found Wells and his allegations credible. Id. at ¶15. Even if Mr. Wells was intoxicated, as the Plaintiff alleges, this would not defeat the finding that there was probable cause to arrest Plaintiff. See Lallemand v. Univ. of Rhode Island, 9 F.3d 214, 216 (1st Cir. 1993)(a victim's positive identification of individual as her rapist supported finding of probable cause for arrest even though victim had been drinking at time of alleged rape).

Because Sgt. Hamilton had probable cause to stop and arrest the Plaintiff, this Court should enter summary judgment on the Plaintiff's illegal arrest claim.

---

[3] The Defendants' Statement of Undisputed Facts is cited as "Facts, ¶ [number]" throughout.

5

### ii. Excessive Force

The Plaintiff's claim of excessive force fails because Sgt. Hamilton used reasonable force when he placed handcuffs on the Plaintiff. See Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006)(handcuffing suspect with hands behind her back in conformity with policy not excessive force).

An officer has the right when making an arrest or an investigatory stop to use some "degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. The question is whether the totality of the circumstances justified the seizure. Id. Not every use of force, such as a push or a shove, even if it may seem unnecessary, violates the Fourth Amendment. Id. Stopping and placing handcuffs on an individual is a minimal use of force, and a use of force that the First Circuit has held will not support an excessive force claim. See Calvi, 470 F.3d at 428. In Calvi, the police arrested the suspect, who had a hand deformity, by handcuffing her with her hands behind her back, and double locking the cuffs as was customary. Id. at 428. The Court upheld the entry of summary judgment for the officer as handcuffing an individual is not excessive force. Id.

Here too, Sgt. Hamilton's handcuffing of the plaintiff with her hands behind her back, and double locking the cuffs in conformity with the Boston Police Department ("BDP") rule 315 was not excessive force. Facts ¶¶ 26,27. For the reasons above and those in Section C, Sgt. Hamilton moves this Court to enter judgment for him on the excessive force claim.

### iii. Sex Discrimination

Plaintiff alleges that Sgt. Hamilton violated the equal protection clause of the U. S. Constitution in violation of 42 U.S.C. § 1983 by calling her a "female dog" and taking actions that he would not have taken against a similarly situated male. Plaintiff's Complaint, ¶35.

Plaintiff has no evidence to support the contention that Sgt. Hamilton arrested her based on her sex and the alleged statement that he called her "bitch" is not sufficient to substantiate a violation of the equal protection clause.

To avoid summary judgment on a claim of sex discrimination in violation of the Fourteenth Amendment, the plaintiff must put forth "competent evidence that a state actor intentionally discriminated against her because she belonged to a protected class." Alexis v. McDonald's Restaurants, 67 F.3d 341, 354 (1st Cir. 1995). "'Mere utterance of [an] epithet which engenders offensive feelings in'" [the listener] is not enough to support a discrimination claim. Farragher v. Boca Raton, 524 U.S. 775, 787 (1998), quoting Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971). Offhand comments, rudeness and isolated incidents will not support a discrimination claim either. Farragher 524 U.S. at 787-788.

Assuming that the Plaintiff's allegations are true, they will not survive summary judgment. Plaintiff has no evidence to support her contention that had Sgt. Hamilton been faced with the same situation except that the alleged thief had been a male that he would have not arrested the male thief. Calling the Plaintiff "a bitch" by itself is insufficient as a matter of law to establish an equal protection claim. See Id. Accordingly, the Court should dismiss the Plaintiff's sex discrimination claims in Counts II and IV.

**B.     Sgt. Hamilton did not violate the Plaintiff's Rights under the Massachusetts Civil Rights Act, G.L. c. 12 §11I**

In Count II, the Plaintiff alleges as violations of the Massachusetts Civil Rights Act ("MCRA") the same claims as she does in Count IV, her federal civil rights claim that Sgt. Hamilton in violation of MCRA illegally arrested her, used excessive force and discriminated against her based upon her sex. Sgt. Hamilton incorporates the arguments in Section A as if fully set herein. Sgt. Hamilton moves this Court to find that he is entitled to qualified immunity

for the claim of excessive force under the MCRA as discussed infra at Section C.[4]  However, to the extent that the Plaintiff makes the claim that the alleged statement by Sgt. Hamilton that he would arrest her any time she was in Chinatown is actionable under the MCRA, Sgt. Hamilton moves this Court to dismiss the claim. Facts ¶21.

The MCRA provides for a private right of action for interference with individual rights "secured by the [C]onstitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth…as described in section 11(H)."  To state a claim under the MCRA, the plaintiff must allege the deprivation of her rights by threats, intimidation or coercion.  See Mass. Gen. L. ch. 12, § 11; Hathaway v. Stone, 687 F. Supp. 708, 711 (1988).  ". . .'[T]hreats' [are] the 'intentional exertion or pressure to make another fearful or apprehensive of injury or harm,' 'intimidation' as 'putting in fear for the purpose of compelling or deterring conduct,' and 'coercion' as 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not have otherwise done.'"  Raymond v. City of Worcester, 142 F. Supp. 2d 145, 149 (D. Mass. 2001) citing Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994).

A police officer's statement to arrest the listener using lawful means does not constitute an actionable statement or a "threat" under the MCRA.  Sena v. Commonwealth, 417 Mass. 250, 263 (1994).  An objective standard is used to assess the evidence of "threats, intimidation, coercion."  Cignetti v. Healy, 89 F. Supp. 2d 106, 125 (D. Mass. 2000).  The subjective state of mind of the person allegedly threatened is irrelevant to the inquiry.  Id.

---

[4] The MCRA and § 1983 are parallel statutes, which are coextensive with each other.  See Canney v. Chelsea, 925 F. Supp. 58, 68 (D. Mass. 1996).  Therefore, the same qualified immunity standard that applies to any claims brought under § 1983 applies equally to any MCRA claims arising from the same incident.  See Durante v. Healy, 405 Mass. 43, 46 (1989).

The alleged statement to Plaintiff by Sgt. Hamilton that he would personally arrest her if she was in Chinatown engaging in illegal activity is not actionable. Facts ¶20. The alleged statements do not constitute a threat under the MCRA. See Sena, 417 Mass. at 263. The alleged statements are an expression by Sgt. Hamilton that he will personally arrest the Plaintiff for illegal conduct. The action threatened is not physical harm. Further, the statement, at best, is speculative and conditional as it relies on the Plaintiff's future conduct.

For the above reasons, Sgt. Hamilton moves this Court to enter judgment that the alleged statement is not actionable under MCRA.

**C. Sgt. Hamilton is entitled to qualified immunity**

This Court should enter summary judgment because Sgt. Sgt. Hamilton is entitled to qualified immunity in regards to the civil rights claims, including the excessive force claims (Counts II and IV), and the assault and battery claim (Count I).[5]

Government officials are entitled to qualified immunity "so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Cox, 391 F.3d at 29. Qualified immunity provides a safe harbor for government officials for a wide array of mistakes. Id. Whether a particular officer is entitled to qualified immunity should be determined as soon as possible because it is not only a defense against liability, but also "'an entitlement not to stand trial or face the other burdens of litigation.'" Id., quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

To determine whether an official violated clearly established rights of which a reasonable person would have know, three inquires are made: 1) "whether the plaintiff's allegations, if true, establish a constitutional violation; 2) whether the constitutional right at issue was clearly

---

[5] If the Plaintiff's excessive force claim under the Fourth Amendment fails then so will her assault and battery claim. See Jesionowski v. Beck, 937 F. Supp. 95, 105 (D. Mass. 1996).

9

established at the time of the alleged violation; and 3) whether a reasonable officer situated similarly would have understood the challenged act or omission to contravene the discerned constitutional right." Cox, 391 F.3d at 29-30.

In the context of an excessive force claim and an official's claim to qualified immunity, the determination of whether an official is entitled to immunity is distinct from the merits of the excessive force claim. Saucier v. Katz, 533 U.S. 194, 205 (2001). To determine whether an officer is entitled to qualified immunity the court should consider the factors laid out in Graham v. Connor, 490 U.S. 386 (1989) and whether a similarly situated officer would reasonably believe the force used was lawful. Saucier, 533 U.S. at 210 (concurring opinion).

In determining whether the force used is reasonable, a number of circumstances are considered including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The reasonableness of the force used is determined by an objective standard without regard to any intent or motivation of the officer. Id. at 397.

Sgt. Hamilton assumes for purposes of argument that if true the Plaintiff's allegations can establish a constitutional violation of excessive force, and that a citizen's right not to be seized by excessive force was clearly established at the time of the Plaintiff's arrest on August 11, 2002.

However, it was objectively reasonable for Sgt. Hamilton to handcuff the Plaintiff with her hands behind her back. Sgt. Hamilton saw a man, Mr. Wells, chasing the Plaintiff through Chinatown at about 2:30 a.m. Mr. Wells accused the Plaintiff of taking money from him about 45 minutes earlier. Facts ¶¶3,4. Sgt. Hamilton was the only officer present when he asked the Plaintiff and Mr. Wells to stop. Facts ¶5. Sgt. Hamilton doubled locked the handcuffs he placed on Plaintiff. Facts ¶7. Plaintiff's hands were handcuffed behind her back. Facts ¶9. The

conditions of Sgt. Hamilton being the only officer present among the Plaintiff and her accuser posed some risk to Officer Sgt. Hamilton.  When Plaintiff was first seen by Sgt. Hamilton she was attempting to flee. Facts ¶3.

Handcuffing an arrestee is an objectively reasonable standard and use of force.  In a similar case, the First Circuit has recently held that summary judgment was proper in an excessive force case where a police officer handcuffed an individual with a hand deformity with her hands behind her back.  Calvi, 470 F.3d at 428.  Handcuffing an arrestee in conformity with a protocol that calls for the arrestee's hands to be cuffed behind their back, and double locked is reasonable. Id.

Assuming that the Plaintiff did complain to Sgt. Hamilton that the handcuffs were too tight, and that he did not loosen them does not defeat Sgt. Hamilton's claim for qualified immunity. Facts, ¶12.  A police officer is not required to credit a suspect's self- serving statements.  Thompson v. Olson, 798 F.2d 552, 557-559 (1st Cir. 1986) (police officer's failure to credit a suspect's claim that he was in diabetic shock and not drunk was negligence and not actionable conduct under 42 U.S.C. § 1983).

Sgt. Hamilton also moves this Court to enter judgment on qualified immunity on the claims of illegal arrest and sex discrimination.  The Plaintiff's allegations as to the illegal arrest and sex discrimination claims do not establish constitutional violations, and so do not pass the first consideration for qualified immunity.  Cox 391 F.3d at 29-30; See infra Section A.  Even if this court were to find that probable cause for the arrest is arguable or subject to question, then qualified immunity will attach as an officer only needs to show that he had objectively reasonable grounds to believe that he had probable cause.  Ricci v. Urso, 974 F.2d 5,7 (1st Cir.

1992).[6] The facts present on August 11, 2002 provided Sgt. Hamilton with objectively reasonable grounds to believe he had probable cause to arrest the plaintiff. The Plaintiff was being chased by Mr. Wells who was accusing her of taking money from him. Facts ¶¶2-4. The Plaintiff was known to Sgt. Hamilton as a prostitute and he had arrested her before and let her go many times with only a warning for her conduct. Facts ¶18. The Plaintiff had stolen before and this was known by Sgt. Hamilton. Facts ¶¶19, 21. It was objectively reasonable based on these facts and the narrative given by Mr. Wells that the Plaintiff had taken his money when she felt him up for Sgt. Hamilton to believe that he had probable cause to arrest the Plaintiff for larceny. Facts, ¶¶14-15.

For these reasons, Sgt. Hamilton moves this Court to find that he is entitled to qualified immunity for the arrest of the Plaintiff and for the claims of excessive force and sex discrimination by the Plaintiff.

**III.     THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS III (C. 258, SEX DISCRIMINATION) AND COUNT V (VIOLATIONS OF 42 U.S.C. § 1983)**

**A.     Count III Fails Because Municipalities Are Immune From Liability For Intentional Conduct and Because Discrimination Claims Are Not Covered By G.L. c. 258**

Count III of the Plaintiff's Complaint alleges that the City is liable for Sgt. Hamilton's alleged discrimination against the Plaintiff based on her sex pursuant to G.L. c. 258, § 2. Plaintiff's Complaint, ¶¶ 30-31. The Plaintiff claims that this liability arises because Sgt. Hamilton's conduct violated the equal protection clause of the Fourth Amendment.[7]

G.L. c. 258, § 2 provides in relevant part:

---

[6] Sgt. Hamilton reserves the right to raise the defense of qualified immunity at trial in response to any claim that is not dismissed as a result of this summary judgment motion.

[7] It is worth noting that the Fourth Amendment, which protects against unreasonable searches and seizures, does not contain the equal protection clause.

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances.

However, under G.L. c. 258, §10(c), a municipality cannot be held liable for any claim arising out of intentional conduct ". . . including assault, battery, false imprisonment, false arrest, [and] intentional mental distress . . . ."

Equal protection claims against government actors, such as the one the Plaintiff bases her G.L. c. 258 claim on, require proof of intent. Crawford-El v. Britton, 523 U.S. 574, 585 (1998); Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998), citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Accordingly, because municipalities are immune from suits brought based on intentional conduct, Count III of the Plaintiff's Complaint fails as a matter of law.

Furthermore, Count III should be dismissed because M.G.L. c. 258 is not a remedy for the wrongs that the Plaintiff alleges. "The inquiry into governmental tort liability in a particular case must begin with a determination whether the conduct in question was in fact tortuous." Whitney v. Worcester, 373 Mass. 208, 216 n. 10 (1977).

Acts of discrimination, whether intentional or unintentional, do not constitute torts. Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 560 (2004) (violation of M.G.L. c.151B not a tort); Jancey v. School Comm. of Everett, 421 Mass. 482, 501 (1995) (claim of wage discrimination not appropriate under c. 258). Because sex discrimination is not a claim under G.L. c. 258, and is barred by §10, judgment for the City must enter on Count III. See id.

### B. The City is Entitled to Judgment on Count V As There Is No Evidence to Support the Claim That a City Policy, Custom or Practice Was the Motivating Force Behind the Alleged Constitutional Violation

The Plaintiff alleges that the City failed to properly investigate allegations of police misconduct, failed to properly train its officers and supervisors, discipline its police officers, and to supervise police officers, and that the City had a policy and/or custom "to inadequately and improperly investigate complaints of police misconduct", "tolerated a policy of violence by its police officers" and failed to employ department wide personnel performance evaluation system to assist in supervising police officers." Complaint, ¶¶ 22,23. The Plaintiff has many accusations, but no evidence to support them.

### i. No evidence of policy, custom, or practice

Municipalities are not liable under Section 1983, either under ordinary applicable principals of vicarious liability or *respondeat superior*, merely because they employ a tortfeasor. Monell v. New York City Dept. of Social Srcvs, 436 U.S. 658, 691 (1978). Municipalities may be subject to suit under 42 U.S.C. §1983 only when there is a "direct causal link" between an official policy or custom of the city and an alleged constitutional violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). The plaintiff seeking damages for an incident resulting from an unconstitutional policy of a city must show either an official policy or a governmental "custom" that violates the Constitution. Id. If the plaintiff relies on a custom, rather than an official policy, the custom or practice must be "so settled and widespread" that city officials can be said to have actual or constructive knowledge of it, yet to have done nothing to end it. Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).

Even if the Plaintiff could prove a constitutional violation, she cannot prevail against the City under 42 U.S.C. § 1983 because she cannot show the violation was caused by any unconstitutional City policy or custom. The City's rule that suspects taken into custody or

arrested are handcuffed with their hands behind their back is not unconstitutional. Facts ¶¶ 25, 26. See Calvi, 470 F.3d at 428 (handcuffing suspect with hands behind her back in conformity with policy not excessive force).

The Plaintiff's Complaint alleges that "[t]he City of Boston is liable for the actions of the named individual defendant because the individual defendant acted pursuant to policies and/or customs of the Boston Police Department which were deliberately indifferent to the constitutional rights of the Plaintiff. The City was grossly negligent to the point of exhibiting deliberate indifference . . . when it caused the defendant to believe that their acts of misconduct . . . would not be investigated and would be tolerated." Plaintiff's Complaint, ¶37. Additionally, the Plaintiff alleges that the City "failed to train and supervise the individual named defendant." Plaintiff's Complaint, ¶38. These allegations are baseless as the City fully and completely investigates complaints made against its officers, and Sgt. Hamilton received training at the Boston Police Academy. Facts ¶¶ 27-33. The liability criteria for "failure to train" claims are "exceptionally stringent." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998). Only if the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact" can the claim against the municipality prevail. Id. For "deliberate indifference" to be established, the Plaintiff must present evidence that: (1) the City knew when it hired Sgt. Hamilton that the risk of future Fourth Amendment violations arising and recurring in arresting and handcuffing individuals was "so obvious" that its failure to train them therein likely would result in continued violations; or (2) even though the initial risk of recurring constitutional violations was not "so obvious," the City subsequently learned of a serious recurrence, yet took no action to provide the necessary training. Id.; Harris, 489 U.S. at 390, n.10.

The Plaintiff has no evidence to establish "deliberate indifference." Rather, the facts show that Sgt. Hamilton received training in the use of force, handcuffing suspects, and the determination of probable cause. Facts ¶¶ 29-33. The Boston Police Department trains its officers in handcuffing suspects and in using force to make arrests. Facts ¶¶31-34. The Plaintiff has no basis to challenge that the City's training of its police officers. The Plaintiff offers no evidence or expert opinion that the City's training, rules, and or procedures are inadequate. See Young v. City of Providence, 404 F.3d 4 (1st Cir. 2005).

Nor can the Plaintiff show that the City did not conduct an adequate investigation. The undisputed facts do not support the allegation that the City has "a custom and policy of deliberate indifference to the rights of its citizens by not adequately investigating citizens' complaints against its police officers, nor taking prompt disciplinary action against officers who violate the rights of citizens." Complaint at ¶¶31-33. The Boston Police Department has established rules and procedures that govern the investigation and discipline of its officers, and a department that conducts these investigations, the Internal Affairs Division ("IAD"). Facts ¶ 28-29. The IAD, just as it always does, thoroughly investigated the Plaintiff's Internal Affairs' complaint in compliance with Rule 102 and 109. Id. As a part of the investigation, the IAD spoke with four (4) witnesses and took their statements. The IAD attempted to contact all the witnesses identified as having relevant information, but the contact information provided was not accurate. An IAD investigation is not flawed because it did not support the Plaintiff's claim. The adequacy of the investigation and the outcome the investigation are separate considerations.

The incident from which the Plaintiff tries to create customs or policies is inadequate to prove municipal liability. "[M]unicipal liability under Section 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Harris, 489 U.S. at 389; Oklahoma City v. Tuttle, 471 U.S. 808, 823

16

(1985). Because other complaints have been lodged against Sgt. Hamilton has no consequence as those complaints have been investigated and not sustained. The Plaintiff cannot establish any relevance to the alleged constitutional violations in this case from the other actions of the defendant. The Plaintiff's allegations have no evidentiary support, and do not meet the requirements to establish municipal liability. The City is therefore entitled to summary judgment as a matter of law on Count V.

### ii.     No evidence to support that City policy was the "motivating force"

The Plaintiff must also demonstrate that through its deliberate conduct, the City was the *moving force* behind any alleged violation and resulting injury. See Harris, 489 U.S. at 397. To prove that a custom or policy is the "moving force" behind an alleged injury, a plaintiff must show that the municipal action was taken with culpability and must demonstrate a direct causal link between the municipal action and the injury. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

The Plaintiff has not met this burden. The only evidence the Plaintiff has put forth are unsubstantiated claims that there was a custom and policy of deliberate indifference to the rights of its citizens in the form of training, supervision, and investigation. The undisputed evidence is that Boston Police Department trained, investigated and supervised its officers. Facts ¶¶ 25-33. There is no evidence to support the contention that the City's rules and/or the training that Sgt. Hamilton received was the moving force behind any alleged constitutional violation. The opposite is true — the City's training and rules are to ensure that suspects and individuals that come in contact with Boston police officers are treated in a manner consistent with professionalism and the law. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely

17

for the actions of its employee." Brown, 520 U.S. at 404. To permit a lesser standard of fault "would result in de facto respondent superior liability on municipalities--a result…rejected in Monell." Harris, 489 U.S. at 392 citing Monell, 436 U.S. at 693-94. Summary judgment is mandated here as the Plaintiff cannot show that there was any failure to train Sgt. Hamilton in the use of force or in the proper way to handcuff suspects, or that the Boston Police Department's rule 315 on handcuffing was the motivating force behind the alleged constitutional violation of the Plaintiff. See McPherson v. Auger, 842 F. Supp. 25 (D. Me. 1994)(town granted summary judgment on plaintiff's civil rights claims as the town's uniform policy on handcuffing suspects was not excessive force and plaintiff could show that town had failed to train officer).

The City is entitled to judgment as a matter of law as the Plaintiff cannot prove that any policy, practice or custom of the City was the moving force behind any alleged constitutional violation or injury.

## **CONCLUSION**

WHEREFORE, the Defendants, Sgt. Christopher Hamilton, and the City of Boston, move this Court to enter summary judgment on all counts.

**DEFENDANTS REQUEST AN ORAL ARGUMENT FOR THIS MOTION.**

Respectfully submitted,

DEFENDANTS CITY OF BOSTON
AND CHRISTOPHER SGT. HAMILTON
William F. Sinnott
Corporation Counsel

By their attorneys,

/s/ L. Bostwick
_____
Elizabeth L. Bostwick BBO# 644498
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-2902

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to L.R. D. Mass. 7.1(A)(2), I hereby certify that I have communicated with Attorneys Veronica White and Thomas Kerner on January 25, 2007 and February 1, 2007 respectively concerning Sgt. Christopher Sgt. Hamilton and the City of Boston's Motion for Summary Judgment and that we were unable to resolve or narrow the issues prior to filing the above motion.

/s/ L. Bostwick
_____
Elizabeth L. Bostwick