258 § 2
Note 4

N.E.2d 62, 26 Mass.App.Ct. 681, review denied 536 N.E.2d 1093, 404 Mass. 1103.

**5. —— Duty of care, tort claims**

Claims against school district and school administrators for breach of duty to prevent or mitigate teacher's sexual abuse of student by failing to investigate or report allegations that he had previously sexually assaulted girls, and for negligent infliction of emotional distress, were barred by Massachusetts Torts Claims Act (MTCA) since the teacher's tortious conduct was not "originally caused" by the district or its administrators and since teacher's alleged sexual misconduct, although some of it occurred on school grounds, was not done within the scope of his employment. Doe v. Old Rochester Regional School Dist., D.Mass.1999, 56 F.Supp.2d 114.

Wrongful death action against state agencies and employees based on parole of convicted rapist who subsequently committed murder was not barred by discretionary function exception to liability under Tort Claims Act; complaint alleged that defendants violated specific statutes, rules, and regulations relating to parole process, and it further alleged that Department of Mental Health failed to use reasonable care by placing victim in housing located next to parolee's work site despite knowledge of parolee's prior dangerous activities while on a work release program. Coughlin v. Department of Correction (1997) 686 N.E.2d 1082, 43 Mass.App.Ct. 809.

Town did not owe boy who was injured crossing road a special duty of care to protect boy from heavy traffic beyond duty owed to public at large and, thus, town was not liable for boy's injuries under Massachusetts Tort Claims Act where boy was injured near large crowd which had gathered to watch workers attempting to free heavy machinery from cranberry bog. Rinkaus v. Town of Carver (1994) 637 N.E.2d 229, 418 Mass. 573.

Requirement of special duty for governmental liability, or the "public duty rule," is inconsistent with the Massachusetts Tort Claims Act and rule will be abolished prospectively, after 1993 legislative session, in order to give legislature opportunity to consider forthcoming change and make any preparations for change that it deems appropriate. Jean W. v. Com. (1993) 610 N.E.2d 305, 414 Mass. 496.

Town could not be held liable under the Massachusetts Tort Claims Act for negligence of its building inspector in giving landowners oral permission to build on property when the Wetlands Protection Act precluded such construction; landowners were not owed a special duty of care inasmuch as they were in a position reasonably to protect themselves from the threatened harm; moreover, town by-law did not place special duty on building inspector to investigate wetland status of any particular piece of property; rather, by-law placed obligation to show compliance with the Wetlands Protection Act on applicant for a building permit. Zocchi v. Town of Hinsdale (1991) 573

N.E.2d 1017, 30 Mass.App.Ct. 803, review denied 579 N.E.2d 1361, 411 Mass. 1103.

A complaint alleging that a town's negligent failure to replace a stop sign caused a vehicle accident and the death of the plaintiff's decedent sufficiently alleged that the town breached a duty of care owed to the decedent, notwithstanding alleged lack of "special relationship" with the decedent. Mamulski v. Town of Easthampton (1991) 570 N.E.2d 1028, 410 Mass. 28.

Evidence in malpractice case involving mental patient who hanged herself supported jury conclusion that psychiatrist was negligent in ordering that patient, who had previously exhibited suicidal tendencies, be placed on 15 minute checks rather than continual observation; patient had exhibited violent behavior directed at herself on several occasions during hospitalization up to three days prior to incident in which she hanged herself and expert testimony indicated that continual surveillance should not have been abandoned until patient had shown a minimum of two weeks of nonharmful behavior. McNamara v. Honeyman (1989) 546 N.E.2d 139, 406 Mass. 43.

**5.6. —— Social host, tort claims**

In context of negligence action against Commonwealth under Tort Claims Act in connection with fatal motor vehicle accident involving intoxicated off-duty national guard member, evidence was insufficient to support finding of negligence under social-host theory based on fact that guard member had become intoxicated at club at national guard armory; fellow off-duty guard member who served as bartender was doing so voluntarily and not within scope of his employment, and there was no evidence indicating that, in allowing him to tend bar, those in authority at armory failed to take reasonable precautions. Burroughs v. Com. (1995) 673 N.E.2d 1217, 423 Mass. 874.

**6. —— Intentional torts, tort claims**

Arrestee's claims that town negligently failed to supervise police officers regarding allegedly illegal arrest stated prima facie case under Massachusetts Tort Claims Act, despite contention that it was merely attempt to evade Act's clear prohibition against claims arising out of intentional tort. Sheehy v. Town of Plymouth, D.Mass.1996, 948 F.Supp. 119.

**7. Exclusiveness of remedy**

Tort Claims Act provides the exclusive damage remedy for injury to persons arising from public employer's violation of Fair Information Practices Act (FIPA); Tort Claims Act superseded statute permitting parties injured by violation of FIPA to claim damages for injury against public employers. Tivnan v. Registrar of Motor Vehicles (2000) 734 N.E.2d 1182, 50 Mass.App.Ct. 96.

Tort Claims Act provided licensee's exclusive remedy for damages arising from Registry of Motor Vehicles' alleged violation of Fair Information Practices Act (FIPA) by issuing duplicate driver's license in licensee's name to an imposter. Tivnan

119

§ 2. Tort Claims Act App.Ct. 96.

Tort Claims Act did not provide exclusive remedy for female cafeteria employees' claims against school committee that they were paid less than male custodians for comparable work, so as to bar their Equal Pay Act claim; even if issue was jurisdictional so as not to be waived when not raised below, acts of discrimination did not become torts merely because they had historical connections to common law tort and contract claims, and employees did not allege that employer was directly liable to them for injuries caused by its employees under doctrine of respondeat superior. Jancey v. School Committee of Everett (1995) 658 N.E.2d 162, 421 Mass. 482.

Injured fire fighter could not avoid consequences of holding that this chapter's exclusivity provision, in conjunction with his receipt of statutory benefits, barred him from suing town under this chapter, by pursuing barred personal injury claim under a contract theory. Monahan v. Town of Methuen (1990) 558 N.E.2d 951, 408 Mass. 381.

**9. Damages**

Where plaintiff sued police officers for false arrest and false imprisonment and sued city for negligence under Massachusetts Tort Claims Act, and the only damages claimed against city were those caused by the police, the liability of the city could not exceed the damages found against the police, and there could be only one recovery. Lewis v. Kendrick, C.A.1 (Mass.)1991, 944 F.2d 949.

Allegation by owners of apartment building that they suffered lost rents resulting from city building inspector's order to tenants that they vacate building immediately, without providing owners notice and opportunity to make building safe, as required by statute, was sufficient pleading of damages from city's failure to provide notice to support their negligence claim under Tort Claims Act. Morais v. City of Lowell (2000) 738 N.E.2d 1158, 50 Mass.App.Ct. 540.

State Tort Claims Act [c. 258, § 1 et seq.] did not modify limits of liability available to state under c. 84, §§ 15, 17 to 19, in connection with slip and fall suit involving city sidewalk from which state had agreed to remove snow. Mix v. Com. (1990) 563 N.E.2d 229, 408 Mass. 736.

City housing authority did not waive limitations on damages contained in this chapter by entering into a contract of insurance for $2 million. Ayala v. Boston Housing Authority (1989) 536 N.E.2d 1082, 404 Mass. 689.

**10. Public employer**

Regional school district, not towns that agreed to form district, was "public employer" within meaning of M.G.L.A. c. 258, § 2 rendering public employers liable for injury or loss of property caused by negligent or wrongful act or omission of public employees while acting within scope of office or employment; language which follows "district" in definition of public employer, listing public

health districts and joint districts or regional health districts, is illustrative, not limiting. Doe v. Town of Blandford (1988) 525 N.E.2d 403, 402 Mass. 831.

**10.5. Public employees**

City receiver's staff, state employees, were protected under Massachusetts law from liability in their official capacities for allegedly negligent or wrongful act of terminating city employee where staff was acting within scope of employment and was under direction and control of public employer. Canney v. City of Chelsea, D.Mass.1996, 925 F.Supp. 58.

**11. Prisoner claims**

Inmate claiming that guards destroyed his television and deprived him of due process, was required to pursue remedy in state courts pursuant to this chapter, where inmate did not charge that Massachusetts' statutory procedures were inadequate or that deprivation of property resulted from some established state procedure. Johnson v. Fair, D.Mass.1988, 697 F.Supp. 567.

**12. Independent contractors**

Department of Youth Services' duty to care for child committed to it could be delegated to independent contractor that conducted residential program, precluding Commonwealth from being held liable under Tort Claims Act [c. 258, § 2] for death of child during camping trip run by contractor. Thornton v. Com. (1990) 552 N.E.2d 601, 28 Mass.App.Ct. 511.

Municipality was not liable for injuries sustained by minor when decorative vase on public fountain gave way as he grasped it for support while retrieving a coin from the fountain, causing injury to his hand; liability extended only to damages caused by municipality's employees, and evidence established that vase had been attached by independent contractor. Rowe v. Town of Arlington (1990) 551 N.E.2d 552, 28 Mass.App.Ct. 359, review denied 554 N.E.2d 851, 407 Mass. 1103.

**13. Costs**

This section rendering public employers liable for personal injury caused by negligent or wrongful act or omission of any public employee while acting within scope of office or employment, in same manner and to same extent as private individual under like circumstances does not provide authorization for an award of costs to successful plaintiff. Ware v. Com. (1991) 564 N.E.2d 598, 409 Mass. 89.

**14. Admiralty**

Commonwealth has waived its immunity to admiralty claims under this act. Morris v. Massachusetts Maritime Academy (1991) 565 N.E.2d 422, 409 Mass. 179.

Any recovery against Commonwealth on admiralty claim was limited by $100,000 liability cap contained in this act. Morris v. Massachusetts Maritime Academy (1991) 565 N.E.2d 422, 409 Mass. 179.

258 § 2
Note 15

CERTAIN WRITS AND PROCEEDING

**15. False arrest**

Arrest without probable cause, even though in good faith, could be found negligent so as to impose liability on city under Massachusetts Tort Claims Act. Lewis v. Kendrick, C.A.1 (Mass.)1991, 944 F.2d 949.

Massachusetts Tort Claims Act did not permit civil action against court employee, who allegedly issued arrest warrant for wrong person; employee was public employee acting within scope of employment. Rivera v. Com. of Mass., D.Mass.1998, 16 F.Supp.2d 84.

Citizens arrested but acquitted on charges of receiving stolen property could not maintain negligence suit against Commonwealth and town, since conduct of town police officer and state trooper in criminal investigation and in pursuing arrest warrants fell within discretionary acts exception to Tort Claims Act; officers had to rely on own judgment, based on experience and knowledge of law, to determine what evidence to seek, how to gather evidence, and whether and when to apply for warrants, and officers' decisions were based on considerations of, and affected, public policy. Sena v. Com. (1994) 629 N.E.2d 986, 417 Mass. 250.

**16. Jury questions**

In suit against city under Massachusetts Tort Claims Act in connection with alleged false arrest of plaintiff, issue as to whether city was negligent either in failure to comply with regulations calling for sending supervisor to scene of reported serious crime or in failing to provide adequate police training, especially with respect to constitutional rights, was for the jury, even in absence of expert opinion. Lewis v. Kendrick, C.A.1 (Mass.)1991, 944 F.2d 949.

**17. Interest**

Postjudgment interest could not be awarded against Commonwealth in tort action. Dinsdale v. Com. (1995) 656 N.E.2d 319, 39 Mass.App.Ct. 926, review denied 659 N.E.2d 286, 421 Mass. 1108.

Postjudgment interest is not recoverable under Massachusetts Tort Claims Act. Onofrio v. Department of Mental Health (1992) 584 N.E.2d 619, 411 Mass. 657.

**18. Liability cap**

Massachusetts Tort Claims Act's $100,000 limitation on recovery against government entity applies to actions under state wrongful death statute. Natriello v. Flynn, D.Mass.1993, 837 F.Supp. 17.

Settlements with joint tort-feasors could be deducted from total damages awarded to plaintiff, rather than the $100,000 public employer liability cap, so long as public employer was not liable for more than the statutory maximum of $100,000 on a tort claim. Stuart v. Town of Brookline (1992) 587 N.E.2d 1384, 412 Mass. 251.

**19. Loss of consortium**

Loss of consortium claim may only be brought, under Massachusetts law, when claimant's spouse has valid tort claim. Sheehy v. Town of Plymouth, D.Mass.1996, 948 F.Supp. 119.

Child of detainee injured due to allegedly improper observation while in protective custody could not recover against city for loss of consortium; in absence of state action directly aimed at parent-child relationship, child lacked liberty interest protected by due process clause in her familial relationship with father. Ringuette v. City of Fall River, D.Mass.1995, 888 F.Supp. 258.

Exclusive remedy provision of Tort Claims Act only applied to individual claim of negligence victim, and did not bar assertion of loss of consortium claim by spouse or child of injured police officer, even if injured police officer already had asserted claim for damages; alternative remedies available to family of benefits upon police officer's death were prospective and hypothetical, and would not compensate family for hardship of experiencing degradation of police officer's mental health. Esposi v. City of Lawrence (1993) 618 N.E.2d 1358, 416 Mass. 194.

**20. Release**

Wrongful death plaintiff's general unqualified release of town's public employee precluded tort claims action against town. Bailey v. Town of Bourne (1995) 645 N.E.2d 44, 38 Mass.App.Ct. 74, review denied 646 N.E.2d 1071, 419 Mass. 1107.

**21. Police**

While state Tort Claims Act barred recovery against police officers, for injuries allegedly sustained by detainee due to improper supervision, actions could be maintained against municipality. Ringuette v. City of Fall River, D.Mass.1995, 888 F.Supp. 258.

Police officers who had improperly supervised drunken detainee had not inflicted emotional distress upon him, so as to subject municipality to liability; lack of proper observation was not outrageous or extreme conduct, beyond possible bounds of decency, as required for liability. Ringuette v. City of Fall River, D.Mass.1995, 888 F.Supp. 258.

City has an affirmative duty to act with reasonable care to prevent harm caused by its police, and liability under statute will result where the city fails to act reasonably. City of Lynn v. Thompson (2000) 737 N.E.2d 475, 50 Mass.App.Ct. 290.

Police officer's allegedly reckless conduct in chasing suspect whose car collided with plaintiff's did not constitute intentional conduct so as to remove his immunity from personal liability under Massachusetts Tort Claims Act. Jackson v. Town of Milton (1996) 669 N.E.2d 225, 41 Mass.App.Ct. 908, review denied 672 N.E.2d 538, 423 Mass. 1113.

Police officer was not acting within the scope of his office or employment when he caused automobile accident, and thus victims could not recover against city under Tort Claims Act; although officer was driving automobile registered to city, on his way to his scheduled shift, was "on call" and was responding to page from subordinate at station, officer had used vehicle to attend golf tournament for personal enjoyment, officer was in town where he was not authorized to act as police officer, his shift had not yet begun, he was not

CLAIMS AGAINST THE COMMONWEALTH, ETC.

being paid, and was intoxicated and unfit for duty when accident occurred. Clickner v. City of Lowell (1996) 663 N.E.2d 852, 422 Mass. 539.

## 22. Res judicata

State Tort Claims Act that provided for filing of suit in state trial court in action against town was not limited waiver of sovereign immunity for such action only to state court and not to federal court, but rather, federal court also had pendent jurisdiction to hear claim, and so res judicata barred state claim against town for actions of police officers, following entry of judgment in federal court in action against police officers that arose from same set of facts as state claim against town for actions of officers. Hayes v. Town of Orleans (1996) 660 N.E.2d 383, 39 Mass.App.Ct. 682.

Application of res judicata to state law claim of plaintiffs who brought action against town alleging that police officers employed by town illegally placed them in protective custody and assaulted them, was not inequitable on basis that defense was raised late in action; defense could not have been raised in answer which was filed before judgment entered in federal action. Hayes v. Town of Orleans (1996) 660 N.E.2d 383, 39 Mass.App.Ct. 682.

## 23. Scope of employment

High school student who was allegedly raped by athletic coach could not maintain state Claims Act suit against district based on negligent misconduct of coach; sexual assaults were not activities within scope of employment, as required for school district liability under Claims Act. Canty v. Old Rochester Regional School Dist., D.Mass.1999, 54 F.Supp.2d 66.

A municipal police chief was not personally liable to the victims of alleged police brutality, under the Massachusetts Tort Claims Act; the statute excluded liability when a state employee was acting within the scope of his employment, and any negligent supervision by the chief occurred within the scope of employment. Martinez v. Wolferseder, D.Mass.1998, 997 F.Supp. 192.

Massachusetts Tort Claims Act (MTCA) protects public employee from negligence claims arising out of his office or employment. Armstrong.v. Lamy, D.Mass.1996, 938 F.Supp. 1018.

Public school officials were protected from former student's negligence claims under Massachusetts Tort Claims Act (MTCA) where student proffered no evidence to support finding that any official was acting outside scope of employment with regard to alleged acts or omissions claimed. Armstrong v. Lamy, D.Mass.1996, 938 F.Supp. 1018.

Teacher's alleged negligent acts and omissions involved in his sexual contact with student were not acts within scope of his office or employment and, therefore, city could not be held liable under Massachusetts Tort Claims Act (MTCA) on basis of teacher's negligent acts and omissions. Armstrong v. Lamy, D.Mass.1996, 938 F.Supp. 1018.

Fact that predominant motive of public employee is to benefit himself does not prevent act from coming within scope of employment, for purposes of determining whether municipality can be held liable under Massachusetts Tort Claims Act (MTCA) on basis of employee's negligent acts and omissions, as long as act is otherwise within purview of his authority. Armstrong v. Lamy, D.Mass.1996, 938 F.Supp. 1018.

Evidence in wrongful death action against Commonwealth under Tort Claims Act in connection with fatal motor vehicle accident involving intoxicated off-duty national guard member was insufficient to establish that fellow off-duty guard member who served alcoholic beverages at armory was acting within scope of his employment such that Commonwealth could be held vicariously liable; bartending was voluntary and without compensation, and there was no evidence that superiors had ordered guard member to provide bartending services. Burroughs v. Com. (1996) 673 N.E.2d 1217, 423 Mass. 874.

Requirement of Tort Claims Act that public employee's actions must have been taken "in the scope of his office or employment" is not to be construed restrictively; factors to be considered include whether conduct in question is of kind employee is hired to perform, whether it occurs within authorized time and space limits, and whether it is motivated, at least in part, by purpose to serve employer. Clickner v. City of Lowell (1996) 663 N.E.2d 852, 422 Mass. 539.

Travel to and from home to place of employment generally is not considered within scope of employment. Clickner v. City of Lowell (1996) 663 N.E.2d 852, 422 Mass. 539.

## 24. Estoppel

Notwithstanding that city initially sent police officer disciplinary letter describing automobile accident caused by officer as occurring "while not on duty" but later sent letter that omitted words "while not on duty" after which officer dropped request for public hearing, city was not estopped from denying, in Tort Claims Act lawsuit brought by victims of that accident against city, that accident occurred while officer was not on duty, absent representation by city or its agents that if officer withdrew his request for hearing, city would consider him to have been acting within scope of his employment for purposes of Tort Claims Act. Clickner v. City of Lowell (1996) 663 N.E.2d 852, 422 Mass. 539.

## 25. Instructions

Jury instruction, that damages on personal injury and loss of consortium claims against city for injuries to pedestrian struck by suspect's vehicle were statutorily limited to $100,000 a claim, was not improper on basis of allegedly allowing jury to circumvent cap on pedestrian's damages by remunerating each of her parents as generously as possible for loss of consortium. Evans v. Avery, C.A.1 (Mass.)1996, 100 F.3d 1033, certiorari denied 117 S.Ct. 1693, 520 U.S. 1210, 137 L.Ed.2d 820, rehear-

CERTAIN WRITS AND PROCEEDINGS

bar to any action by the claimant against such public employer or public employee, by reason of the same subject matter.
Added by St.1978, c. 512, § 15.

### Historical Note

**Prior Laws:**
St.1879, c. 255, § 4.
P.S.1882, c. 195, § 5.

R.L.1902, c. 201, § 4.
G.L.1932 (Ter.Ed.) c. 258, § 4.

### Library References

Counties ⇐206(1).
Municipal Corporations ⇐1015.
States ⇐185.
C.J.S. Counties § 313.
C.J.S. Municipal Corporations § 2180.
C.J.S. States § 279.

Comments.
Finality of judgments, see M.P.S. vol. 5B, Rodman, § 2087.

Immunities, sovereign immunity, Massachusetts tort claims act, procedure, statute of limitations, see M.P.S. vol. 37, Nolan, § 365.
Municipality as defendant, see M.P.S. vol. 11, Martin and Hennessey, § 84.
Sovereign immunity, procedure for arbitrating, compromising, or settling a civil action, see M.P.S. vol. 40, Cella, § 1979 et seq.

## § 8.  Insurance

A public employer may procure insurance for payment of damages incurred pursuant to this chapter.
Added by St.1978, c. 512, § 15.

### Library References

Comments.
Indemnity of employees and insurance, see M.P.S. vol. 5B, Rodman, § 2088.
Liability of public body or officer, see M.P.S. vol. 18B, Randall and Franklin, § 1652.

Sovereign immunity, insurance, see M.P.S. vol. 40, Cella, § 1986.

## § 9.  Indemnity of public employees

Public employers may indemnify public employees from personal financial loss and expenses, including legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law; if such employee or official at the time of such intentional tort or such act or omission was acting within the scope of his official duties or employment.  No such employee or official shall be indemnified under this section for violation of any such civil rights if he acted in a grossly negligent, willful or malicious manner.

For purposes of this section, persons employed by a joint health district, regional health district or regional board of health, as defined by sections twenty-seven A and twenty-seven B of chapter one hundred and eleven, shall be considered employees of the city or town in which said incident, claim, suit, or judgment is brought pursuant to the provisions of this chapter.
Added by St.1978, c. 512, § 15.  Amended by St.1980, c. 315, § 2.

## Historical Note

St.1980, c. 315, § 2, approved June 19, 1980, added the second paragraph.

### Library References

States ⟺78.
C.J.S. States § 126 et seq.

**Comments.**
Immunities, sovereign immunity, Massachusetts tort claims, indemnification of public employees, see M.P.S. vol. 37, Nolan, § 369.
Indemnification, employees and officials, see M.P.S. vol. 18B, Randall and Franklin, § 1656.
Indemnification of public officers and employees, Massachusetts tort claims act, see M.P.S. vol. 39, Cella, § 1058.
Indemnity of employees and insurance, see M.P.S. vol. 5B, Rodman, § 2088.

Liability of public body or officer, see M.P.S. vol. 18B, Randall and Franklin, § 1652.
Municipality as defendant, see M.P.S. vol. 11, Martin and Hennessey, § 84.
Powers exercisable by cities and towns, see M.P.S. vol. 18, Randall and Franklin, § 33.
Sovereign immunity, indemnity of public employees, see M.P.S. vol. 40, Cella, § 1993.
Tort liability of public officers and employees, intentional torts under the Massachusetts tort claims act, see M.P.S. vol. 39, Cella, § 1059.

### Notes of Decisions

Civil rights actions 3
Purpose of law 1
Scope of employment 2

**1. Purpose of law**

By including certain restrictions upon indemnification of public employees, legislature apparently sought to limit ability of public employers to expose taxpayer to potential sizable financial obligations arising out of intentional torts and civil rights violations committed by public employees. Filippone v. Mayor of Newton (1983) 452 N.E.2d 239, 16 Mass. App. 417, reversed on other grounds 467 N.E. 2d 182, 392 Mass. 622.

This section permitting public employers to indemnify public officials within scope of their official duties or employment from personal financial loss and expenses, including legal fees and costs arising out of intentional torts or civil rights violations, and § 13 of this chapter, are specific in their terms and were intended by legislature to confine, on grounds of public policy, indemnification of public employees by their employers to covered cases where there is loss or actual expense which is personal to, employee, not occasioned in civil rights cases by grossly negligent, willful or malicious conduct and, in any event, subject to maximum indemnification of $1 million. Id.

**2. Scope of employment**

Though respondeat superior principles are usually applied to determine whether employer should be held liable for acts of employees, test is, at least, useful in determining scope of

employment under this section. Howard v. Town of Burlington (1987) 506 N.E.2d 102, 399 Mass. 585.

Town was not restricted to expending public funds to indemnify chairwoman of town's finance committee only if her discussion with town's chief administrative officer about ambulance situation was within scope of her official duties as chairwoman of committee as determined by general by-laws of town. Howard v. Town of Burlington (1987) 506 N.E.2d 102, 399 Mass. 585.

Discussion of chairwoman of town's finance committee with town's chief administrative officer regarding ambulance situation fell within scope of general employment under this section. Howard v. Town of Burlington (1987) 506 N.E.2d 102, 399 Mass. 585.

Mayor possessed authority to fire his secretary and as long as firing was of type which might in normal course of events be lawfully performed by the official, it was "within the scope of his official duties or employment" within ordinance providing for indemnification of certain public officers, even though, in particular case, action might be improperly motivated or ineptly or even unlawfully executed. Filippone v. Mayor of Newton (1983) 452 N.E.2d 239, 16 Mass.App. 417, reversed on other grounds 467 N.E.2d 182, 392 Mass. 622.

**3. Civil rights actions**

Fact that this section allows indemnification by public employer of certain federal civil rights violation does not bring cause of action arising under 42 U.S.C.A. § 1983 for race discrimination within ambit of this chapter, gov-

Library References

Texts and Treatises
56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 206.
57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 37 et seq.

15A Am Jur Legal Forms 2d, Municipal, School and State Tort Liability §§ 181:11-181:17

## § 9.   Indemnity of public employees

### American Law Reports

Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.

Validity and construction of statute authorizing or requiring governmental unit to indemnify public

officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.

### Library References

Comments.
Immunities, sovereign immunity. Massachusetts tort claims act, indemnification of public employees, see M.P.S. vol. 37A, Nolan and Sartorio, § 511.

Texts and Treatises
57 Am Jur 2d, Municipal, School, and State Tort Liability § 63.

63 Am Jur 2d, Public Officers and Employees §§ 303, 548.

Shapiro, Perlin and Conners, Massachusetts Collection Law 2d Ed, § 7:36.

Shapiro, Perlin and Conners, Massachusetts Collection Law: Debtor/Creditor Practice, Procedure. Remedies.

### Notes of Decisions

Collective bargaining agreements   4

---

4.  Collective bargaining agreements
Arbitrator exceeded his authority in granting police union's request for collective bargaining agreement provision that would make city's indem-

nification of bargaining unit members mandatory; mandatory indemnification conflicted with statute providing city with discretion to decide whether to indemnify patrolmen. City of Boston v. Boston Police Patrolmen's Ass'n, Inc. (1999) 717 N.E.2d 667, 48 Mass.App.Ct. 74, review denied 722 N.E.2d 19, 430 Mass. 1112.

## § 9A.   Actions against members of police force; indemnity

If, in the event a suit is commenced against a member of the state police or an employee represented by state bargaining unit five, by reason of a claim for damages resulting from an alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law, the commonwealth, at the request of the affected police officer, shall provide for the legal representation of said police officer.

The commonwealth shall indemnify members of the state police or an employee represented by state bargaining unit five, respectively, from all personal financial loss and expenses, including but not limited to legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment resulting from any alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law; provided, however, that this section shall apply only where such alleged intentional tort or alleged act or failure to act occurred within the scope of the official duties of such police officer.

No member of the state police or an employee represented by state bargaining unit five shall be indemnified for any violation of federal or state law if such member or employee acted in a wilful, wanton, or malicious manner.

Amended by St.1991, c. 412, § 92.

125

Historical and Statutory Notes

**1991 Legislation**

St.1991, c. 412, § 92, an emergency act, approved Dec. 27, 1991, and by § 139 made effective July 1, 1992, deleted ", the metropolitan district police, the capitol police, the registry of motor vehicle police" following "the state police" in three places.

## American Law Reports

Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.

## Library References

**Texts and Treatises**

56 Am Jur 2d, Municipal Corporations §§ 19—25 (Employment of counsel).

## Notes of Decisions

Civil rights violations 4
Instructions 5
Intentional torts 3
Willful or malicious acts 2

**2. Willful or malicious acts**

Jury's failure to award punitive damages in civil rights action brought by citizen against Metropolitan District Commission officer for instituting criminal complaint in retaliation for citizen filing citizen's complaint did not establish that officer's actions were not willful, wanton, or malicious within meaning of exclusion in this section. Pinshaw v. Metropolitan Dist. Com'n (1988) 524 N.E.2d 1351, 402 Mass. 687.

For purpose of exclusion in this section when Metropolitan District Commission officer acts in willful, wanton, or malicious manner, "willful, wanton, or malicious conduct" means egregious conduct which would warrant imposition of punitive damages in underlying action. Pinshaw v. Metropolitan Dist. Com'n (1988) 524 N.E.2d 1351, 402 Mass. 687.

**3. Intentional torts**

This section providing for Commonwealth to indemnify Metropolitan District Commission officers for intentional torts and civil rights violations, and not statute providing for indemnification of officers by Metropolitan District Commission when officer suffered financial loss from his own injury in line of duty or where officer was required to pay damages for harm to third person was applicable to cases involving intentional torts and civil rights violations. Pinshaw v. Metropolitan Dist. Com'n (1988) 524 N.E.2d 1351, 402 Mass. 687.

**4. Civil rights violations**

This section providing for Commonwealth to indemnify Metropolitan District Commission officers for intentional torts and civil rights violations, and not statute providing for indemnification of officers by Metropolitan District Commission when officer suffered financial loss from his own injury in line of duty or where officer was required to pay damages for harm to third person was applicable to cases involving intentional torts and civil rights violations. Pinshaw v. Metropolitan Dist. Com'n (1988) 524 N.E.2d 1351, 402 Mass. 687.

**5. Instructions**

Ratification instruction was insufficient in action by successful civil rights litigant to enforce police officer's assigned rights to indemnification under statute providing for Commonwealth to indemnify members of metropolitan district police for expenses arising out of civil rights violations occurring within scope of officer's official duties; instruction neither adequately informed jury that ratification by officer's superiors could transform unauthorized act into statutorily indemnifiable conduct nor fully explored issue of ratification, and it erroneously focused on subjective belief of officer's superiors as to his actions. Pinshaw v. Metropolitan Dist. Com'n (1992) 604 N.E.2d 1321, 33 Mass. App.Ct. 733, review denied 609 N.E.2d 39, 414 Mass. 1105.

126

CRIMES AGAINST THE PERSON

## Library References

Theaters and Shows ⊆5.
WESTLAW Topic No. 376.
C.J.S. Theaters and Shows § 38.

Texts and Treatises
52 Am Jur 2d, Malicious Mischief §§ 3 to 10.

o Am Jur 2d, Assault and Battery § --

## § 37. Violations of constitutional rights; punishment

No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the commonwealth or by the constitution or laws of the United States. Any person convicted of violating this provision shall be fined not more than one thousand dollars or imprisoned not more than one year or both; and if bodily injury results, shall be punished by a fine of not more than ten thousand dollars or by imprisonment for not more than ten years, or both.

Added by St.1979, c. 801, § 2.

### Historical and Statutory Notes

St.1979, c. 801, § 2, was approved Nov. 16, 1979.

### Cross References

Hate crimes, reporting, see c. 22C, § 33 et seq.

### American Law Reports

What constitutes violation of 18 USCA § 245(b), prohibiting interference with civil rights 76 ALR Fed 816.

### Law Review and Journal Commentaries

Civil rights law. Marjorie Heins, 76 Mass. L.Rev. 77 (1991).

Civil rights litigation in Massachusetts under the violence against women act. Elizabeth A. Billowitz, 43 Boston B.J. 10 (No. 2, 1999).

Rights protected by Massachusetts Civil Rights Act against interference on account of race or color. Anthony P. Sager 1.933 Suffolk U.L.Rev. 53.

### Library References

Assault and Battery ⊆47, 100.
Civil Rights ⊆471, 472.
WESTLAW Topic Nos. 37, 78.
C.J.S. Assault and Battery §§ 62, 130.
C.J.S. Civil Rights §§ 476 to 480.

Comments.
Massachusetts Civil Rights Act, see Randall and Franklin, 18 Massachusetts Practice § 413; Nolan and Sartorio, 37A Massachusetts Practice § 521.
Punishment for violation of constitutional rights, see Nolan and Henry, 32 Massachusetts Practice § 66.

Forms.
Interference with rights, in general, see Rodman, 10 Massachusetts Practice § 911.

Texts and Treatises
15 Am Jur 2d, Civil Rights §§ 22, 263

5A Am Jur Pl & Pr Forms (Rev), Civil Rights Forms 2, 6, 7.

## Notes of Decisions

In general　2
Nature and elements of offense　3
Review　5
Validity　1
Willfulness　4

---

### 1. Validity

This section is not unconstitutionally vague with regard to requirement that defendant has acted "willfully" in interfering with victim's free exercise or enjoyment of right or privilege secured by Constitution or laws of United States or by Constitution or laws of Massachusetts. Com. v. Stephens (1987) 515 N.E.2d 606, 25 Mass.App.Ct. 117.

### 2. In general

Violent attacks by defendant against victims of Cambodian origin at apartment house where they resided deprived them of rights secured by both federal and state law, including right to be safe and secure and to use their property peacefully, and to occupy housing without threat of force because of their race, and thus defendant could be convicted under this section. Com. v. Stephens (1987) 515 N.E.2d 606, 25 Mass.App. Ct. 117.

### 3. Nature and elements of offense

Crime of assault and battery through use of force interfering with rights was felony under portion of statute which provided, in cases of bodily injury, for fine of $10,000 or imprisonment "for not more than ten years"; latter phrase, although it did not specify imprisonment in state prison, had to be so interpreted in order not to be nullity and thus was felony. Com. v. Zawatsky (1996) 670 N.E.2d 969, 41 Mass.App.Ct. 392.

Charge of assault and battery through use of force interfering with rights was felony as charged and prosecuted where complaint charged defendants with having done victims bodily harm, even though bill of particulars did not speak of "bodily" injury; one defendant was definitely sentenced pursuant to felony provisions of statute, and evidence of bodily injury was admitted at trial and argued. Com. v. Zawatsky (1996) 670 N.E.2d 969, 41 Mass.App. Ct. 392.

### 4. Willfulness

Evidence supported finding that defendant acted "willfully" in attacking victims of Cambodian origin, thereby supporting his conviction under this section; there was proof that defendant, because of his dislike of Cambodians, acted with specific intent to deprive victims of their right to live peaceably in their homes and to use public sidewalks and streets without being harrassed or assaulted. Com. v. Stephens (1987) 515 N.E.2d 606, 25 Mass.App.Ct. 117.

### 5. Review

Issue of whether trial court had jurisdiction over civil rights offense could be raised for first time on appeal from conviction. Com. v. Zawatsky (1996) 670 N.E.2d 969, 41 Mass.App.Ct. 392.

## § 38. Abuse of patients in long-term care facilities

Any person who knowingly and wilfully abuses, mistreats, or neglects a patient or resident of a long-term care facility required to be licensed under section seventy-one of chapter one hundred and eleven, shall be punished by imprisonment in a jail or house of correction for not more than two years or by a fine of not more than five thousand dollars, or by both such fine and imprisonment.

Added by St.1980, c. 479, § 2.

### Historical and Statutory Notes

St.1980, c. 479, § 2, was approved July 11, 1980.

Section 3 of St.1980, c. 479, provides:

"The provisions of this act are severable and the invalidity of any section shall not affect the continuing validity of any other of said sections."

### Library References

Assault and Battery ⊂⊃47, 100.

WESTLAW Topic No. 37.

416 Mass. 558

555COMMONWEALTH

v.

Thomas ADAMS & others.[1]

Supreme Judicial Court of Massachusetts, Suffolk.

Argued Sept. 8, 1993.

Decided Dec. 15, 1993.

The Attorney General brought an action for injunctive relief against police officers, alleging that they had used excessive force against arrested suspect while in performance of duties and had failed to report the incident and the suspect's injuries. The Superior Court, Hiller B. Zobel, J., found that officers had violated suspect's civil rights and granted injunction. Officers appealed. The Supreme Judicial Court transferred the case from Appeals Court on its own motion, and Wilkins, J., held that: (1) officers who were present when other officers battered suspect were involved in joint enterprise in which suspect's civil rights were violated; (2) failure of nonbattering officers to intervene to protect suspect's civil rights supported conclusion that all officers violated suspect's civil rights; (3) issuance of injunction was not abuse of discretion; and (4) injunction was not overly broad.

Affirmed.

Liacos, C.J., filed opinion concurring in part and dissenting in part.

Lynch, J., filed concurring opinion.

1. Civil Rights ⚖️451

Police officers who were present when other officers battered arrested suspect were involved in joint enterprise in which suspect's civil rights were violated; each officer, including those who did not touch suspect, knew that excessive force was being applied to suspect, knowingly approved and permitted use of excessive force, and shared mental state of those applying

force, and thus act of each was chargeable vicariously against the rest. M.G.L.A. c. 12, § 11H.

2. Civil Rights ⚖️133

Failure of police officers, who were present when other officers battered arrested suspect, to intervene to protect suspect's civil rights, when they knew that they had duty to do so, supported conclusion that all of officers violated suspect's civil rights. M.G.L.A. c. 12, § 11H.

3. Injunction ⚖️77(2)

In appropriate circumstances, judge has discretion to enjoin future police misconduct; there is no exception for police officers to Attorney General's authority to seek equitable relief to protect exercise of citizen's rights, although police officer status may be relevant in determining whether to issue particular injunction. M.G.L.A. c. 12, § 11H.

4. Civil Rights ⚖️450

Issuance of injunction prohibiting police officers who violated suspect's civil rights from future use of excessive force and imposing general reporting requirements was not abuse of discretion; incident involved officers' collective violation of suspect's rights and collective failure to prevent or report violation, and officers subsequently denied that incident occurred and professed difficulty in identifying which officers were present, although each officer knew all or almost all other officers present. M.G.L.A. c. 12, § 11H.

5. Civil Rights ⚖️450

Injunction prohibiting use of excessive force and imposing general reporting requirements on police officers who violated arrested suspect's civil rights by battering him, was not overly broad; prohibition against use of excessive force stated the law and so placed no new restraint on officers, and reporting requirements presented no safety concerns. M.G.L.A. c. 12, § 11H.

1. Michael J. Bukoff, Richard Paul Connolly, Francis Joseph Deary, John Hughes, Vincent D. Kelly, Joseph William Kenneally, Emmett Fran-

cis McNamara, Daniel F. O'Connor, Pam Ann Robinson, Perry Richard Roy, Christopher K. Shoulla, and Frederick Waggett.

COM. v. ADAMS
Cite as 624 N.E.2d 102 (Mass. 1993)

[1589]Frank J. McGee, Marshfield, for defendants.

Richard W. Cole, Asst. Atty. Gen. (Stanley J. Eichen, Asst. Atty. Gen., with him), for the Com.

Before LIACOS, C.J., and WILKINS, ABRAMS, LYNCH and GREANEY, JJ.

WILKINS, Justice.

The Attorney General brought this action for injunctive relief, pursuant to G.L. c. 12, § 11H (1992 ed.), against the thirteen defendants, each of whom is a Boston police officer. In May, 1992, a Superior Court judge entered a judgment enjoining each defendant from using excessive force while in the performance of police duties, from failing to report to the proper authorities knowledge of any visible injury occurring in the course of an arrest, and from failing to report to the proper authorities knowledge of the use of excessive force by any Boston police officer in the performance of that officer's duties.[2] We transferred the defendants' appeal to this court on our own motion.[3]

We recite the trial judge's findings of fact leading to and following the arrest of one John L. Smith, Jr., shortly after sunrise on May 12, 1988, in Brookline. Smith, who had been consuming cocaine, was sitting in his parked motor vehicle near Fenway Park when he became concerned that, if he did not leave the area, police officers in the vicinity would arrest him for possession of a controlled substance. When Smith drove away, officers in a police cruiser, the defendants Bukoff and O'Connor, followed Smith because they believed that Smith's conduct warranted a brief threshold inquiry. At Ipswich[560] Street, Smith drove through a red light, and police pursuit began in earnest. Smith committed several more traffic violations, knew the

police wanted him to stop, but continued nevertheless. At no time did he exceed any applicable speed limit. He then headed west on the Massachusetts Turnpike extension. The officers advised their dispatcher of the pursuit. Smith swerved his vehicle toward the pursuing police cruiser, intending to cause the officers to abandon the chase. Another police cruiser, occupied by the defendants Waggett and Robinson, joined the pursuit. Smith also threatened a collision with their cruiser. Two other cruisers, one occupied by the defendants Shoulla and Kenneally and the other occupied by the defendants Terry and McNamara, also joined the chase.

Smith went through the Brighton toll plaza without stopping and headed east on Soldiers Field Road and Storrow Drive. The separate cruisers, the defendants Hughes, Kelly, and Roy joined the procession, as did the defendants Connolly and Adams in their cruiser. Eight cruisers were now in pursuit of Smith. Smith left Storrow Drive and headed in-town on Commonwealth Avenue. At Kenmore Square he turned onto Beacon Street, headed toward Brookline. After a series of turns and Smith's evasion of a partial roadblock set up by two of the defendants, Smith's engine died on Borland Street in Brookline.

The judge found that each of the defendants "had developed not only a high degree of frustration and emotional excitement concerning Smith's refusal to stop but also strong feelings of anger and personal animosity toward the as yet unidentified driver of the vehicle they had been vainly trying to halt, who had repeatedly swerved so as to threaten one or another police cruiser." The defendant Waggett, operating the first cruiser to arrive, deliberately drove his cruiser's right front bumper into the driver's side door of

---

2. The operative language in the injunction states that the defendants "are while employed by the Boston Police Department, hereby,

   *Enjoined* from: (a) using excessive force while in the performance of her or his police duties; (b) failing to report to the proper authorities her or his knowledge of any visible injury occurring in the course of an arrest;

   and (c) failing to report to the proper authorities her or his knowledge of the use by any Boston Police officer of excessive force while in the performance of such officers' duties."

3. A Justice of the Appeals Court suspended the injunction pending appeal. 34 Mass.App.Ct. 1116 (1993).

Smith's vehicle and then backed away. The other cruisers arrived within a minute of Waggett's cruiser.

Waggett approached the Smith vehicle on the driver's side, while his partner Robinson approached the passenger side. [15a]There were then eight armed police officers within ten feet of Smith's vehicle, which was boxed in by the cruisers. The doors of the Smith vehicle were unlocked. Smith was sitting quietly in his vehicle, alone. Each defendant was close enough to hear what was said and to see what was happening outside Smith's vehicle. When Waggett ordered him out of the vehicle, Smith responded by lying down on the front seat. Waggett, seeing that Smith was refusing to obey his order, broke the driver's side window with a flashlight. The defendant Kelly then broke the passenger side window with his baton. Kelly and the defendant Hughes reached in the vehicle and dragged Smith out through the window, although they could have more easily removed Smith by opening the door. At this point, every defendant became aware that Smith was unarmed and completely under police control. Waggett, Kelly, and Hughes threw Smith to the street. Smith did not attempt to strike any officer or to flee or avoid arrest. Nevertheless, without any valid law enforcement reason, Waggett, Kelly, and Hughes "hurled themselves on top of Smith" to punish him for leading the police in the chase. Other unidentified officers joined the pile. Each defendant saw what was happening, approved of it, and made no attempt by word or deed to protect Smith, because each wished to punish Smith for his behavior during the chase. Each defendant stood ready to participate if opportunity offered or if asked to do so. No supervisor was present. No officer had authority over any other officer. Smith suffered contusions, cuts, and bruises in the scuffle. Waggett, Kelly, and Hughes then handcuffed Smith's hands behind his back and left him face down on the pavement. Although there was no valid police reason to leave Smith there, Smith remained face down for five to ten minutes. No further physical force was needed to restrain Smith. From

time to time, when Smith raised his upper body, one of the defendants put foot on Smith's back or head and pushed him to the pavement, causing contusions on Smith's back and scalp. Each defendant knew of this conduct and approved of it. No defendant made any effort to stop it or to object to it. Two of the defendants then took Smith, [15b]whose wounds were plainly visible, to the police station. Rule 318-A in Boston police department rules and regulations required each defendant to report the visible injuries incurred in the course of Smith's arrest and the names of all persons involved, but no defendant did so.

The judge ruled that excessive force was used in removing Smith from his vehicle in throwing Smith to the pavement and in piling on top of Smith. Pushing Smith's body and face to the pavement by means of a shod foot involved excessive force on a person in custody. Bukoff and [?] Connor, as the arresting officers, tolerated the use of excessive force in violation of police department rule 318-A(5). Each defendant, the judge concluded, knowingly permitted the use of excessive force on Smith and either participated in the application of excessive force or shared the mental state of those who were applying it, while keeping themselves in position to assist if help were needed or requested. The judge concluded that the defendants had engaged in a joint venture, and thus each was vicariously liable for the acts of the others.

Discussing the question whether the defendants' conduct amounted to a violation of Smith's civil rights, the judge concluded "these police officers, many of considerable professional experience, simply did not regard their treatment of Smith as either improper or unusual. Their testimony and demeanor, together with the documentary record, made plain to the Court that each of them considered the incident so insignificant as to merit no particular comment then or afterward, either by themselves or anyone else." He added that "[t]hese officers acted as though none had ever heard that an arrested person possessed any rights which an offended police officer was bound to respect. This Court cannot otherwise

explain the defendants usually disregarding the plain requirement of [Boston police department] Rule 303(2) that police officers are 'bound to refrain from any use of force that unnecessarily tends to administer punishment at the hands of a police officer,' and the explicit command of Rule 318–A not only to treat a prisoner 'in a fair and humane manner,' but to respect his rights." "They ignored without the slightest hesitation,[sss] without the briefest consideration, the fundamental principle, also contained in Rule 303(2), that 'responsibility for punishment of criminal acts rests solely with duly constituted courts of law and penal institutions and is by no means extended to the police.' " "Thus they set out to teach this scofflaw a lesson. Unfortunately, in doing so, they themselves gave the law disrespect. By deliberately inflicting excessive physical force; by failing to protect Smith from fellow officers who were exerting excessive physical force on him; or by participating in the lawless infliction of summary street-level punishment, each and every defendant in some way deprived Smith of civil rights guaranteed him under the Massachusetts Constitution and the Civil Rights Act, G.L. c. 12, §§ 11H–J.'"

The judge then turned his attention to the questions whether an injunction enjoining future misconduct should be issued and, if so, what its nature and scope should be. The Commonwealth contended that only the threat of sanctions could deter the defendants from lawless disregard of citizens' civil rights. The defendants argued, however, that an injunction would make them incapable of using sound police judgment and would even put them at physical risk. The judge thought it significant that

4. The Commonwealth presented civilian witnesses, residents of Borland Street, who saw certain portions of the events involving Smith and the officers.

The judge was most careful not to base any finding on his disbelief of aspects of the officers' testimony, especially their denial that particular acts of violence toward Smith ever took place and their unwillingness to admit that other defendants, well-known to them, were present at the scene. See *Commonwealth v. Michaud*, 389 Mass. 491, 498, 451 N.E.2d 396 (1983) (disbelief of testimony does not support a finding that the opposite is true).

none of the defendants' answered questions about any part of the incident. On the question of what relief to grant, if any, the judge rightly considered the defendants' attitudes, including their denials in their testimony of facts that he had found to be true on affirmative evidence before ___. The judge's low assessment of the defendants' candor affected his decision whether sanctions were necessary. "Moreover," he added, "the lack of memory from 1984 ___ the defendants professed to suffer, particularly about the identities of fellow officers and significant activities which took place in their presence, reinforces my conviction that the officers, in the phrase of the day, 'don't get it,' and that they do not understand how improperly they behaved on Borland Street and how ___ they ___ ed thereafter."

The judge determined that an injunction was necessary for the public good. ___ concluded that the Attorney General ___ established that the defendants must ___ enjoined from the kind of conduct that they had engaged in on Borland Street and from failing to report certain information to their superiors so that the defendants would not feel free to ___ their practices. The injunction first described in his opinion was therefore entered.

The defendants' principal arguments challenge both the issuance of the injunction and its scope. Before discussing these claims, however, we shall dispose of the defendants' other contentions. The Attorney General had explicit authority to bring this action pursuant to G.L. c. 12 § 11H.[5] Although they express unhappiness that the judge made the findings of fact that ___

5. The first sentence of § 11H reads as follows: "Whenever any person or persons whether or not acting under color of law interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."

132

136 Mass.    62, NORTH EASTERN REPORTER, 2d SERIES

did. the defendants make no reasoned argument that any of the judge's findings of fact were "clearly erroneous." Mass. R.Civ.P. 52(a), 365 Mass. 816 (1974).

[1] A more substantial argument is the claim that the judge erred in ruling that the officers who were not identified as having had physical contact with Smith nevertheless violated the Massachusetts Civil Rights Act. These non-battering defendants argue that there was no evidence to warrant the finding of their involvement in a joint venture in which Smith's civil rights were violated. We disagree. The judge properly concluded, based on the subsidiary facts, that there was a joint enterprise in which each defendant participated. The subsidiary facts, which were warranted by the evidence, include the findings that each of the defendants, including those who did not touch Smith, (1) knew that excessive force was being applied to Smith, (2) knowingly approved and permitted the use of excessive force on him, and (3) shared the mental state of those applying that force. In such circumstances, there was a joint enterprise in which Smith's civil rights were violated, and, therefore, the act of each participant in the enterprise is chargeable vicariously against the rest. See *Bell v. Mazza*, 394 Mass. 176, 184, 474 N.E.2d 1111 (1985); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988) (an episode of excessive force of sufficient duration could "support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator").

[2] Quite apart from the joint venture theory as a basis for ruling that the non-battering officers violated Smith's civil rights are the facts that each of the non-battering defendants, aware of the threatening and intimidating physical acts, did nothing to stop them. In the Federal civil rights context, "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another

6. Of course, "[a] police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack." *Gaudreault v. Salem*, 923 F.2d 203, 207 & n. 3 (1st

officer's use of excessive force can be held liable under [42 U.S.C. §] 1983 for his nonfeasance." *Gaudreault v. Salem*, F.2d 203, 207 n. 3 (1st Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). See *O'Neill v. Krzeminski*, *supra* at 11; *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *Byrd v. Brishke*, 466 F.2d 6, 10–11 (7th Cir.1972); *Hathaway v. Stone*, 687 F.Supp. 708, 712 (D.Mass.1988); *Bibbo v. Mulhern*, 621 F.Supp. 1018, 1021 (D.Mass.1985).[6] The same principle appropriately applies under the State Civil Rights Act. See *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822–823, 473 N.E.2d 1128 (1985). The failure of the nonbattering defendants to intervene to protect Smith's rights, when they knew that they had a duty to do so, independently supports the conclusion that all the defendants violated Smith's civil rights.

[3] We come then to the defendants' challenges to the issuance of any injunction, even if the defendants did violate Smith's civil rights. They argue that injunctive relief is barred because the judge had no authority to impose continuing judicial supervision of police officers' street activities and, furthermore, that no injunction could properly be issued in 1992 based on a single incident in 1988. Section 11E of G.L. c. 12 authorizes the Attorney General to seek equitable relief to protect the peaceable exercise of rights secured by law when threats, intimidation, or coercion interfere or attempt to interfere with rights secured by law.. There is no explicit, and no justification for finding an implicit exception for officers of the law, although the defendant police officers' status may be relevant in determining whether to issue a particular injunction. See *Perez v. Boston Hous. Auth.*, 379 Mass. 703, 730, 400 N.E.2d 1231 (1980).

[4] In appropriate circumstances, a judge has discretion to enjoin future police

Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). See *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988).

Attorney General v. Dizoglio (or Mass. 1993)

misconduct. A single, egregious incident involving a collective violation of a citizen's rights and a collective failure to prevent or to report that violation would warrant issuance of an injunction where, as here, the judge found that, without any injunction, the defendants "will regard themselves as free to continue" their unlawful conduct. Moreover, the judge was justified in regarding the failure of the defendants, many of whom had considerable professional experience, to report the incident as contributing in a fundamental way to the obstruction of justice.

The law leaves to the sound discretion of the trial judge the issuance and scope of equitable relief. *Commonwealth v. Guilfoyle*, 402 Mass. 130, 135, 521 N.E.2d 984 (1988). The fact that this action was brought and an injunction was sought by the Attorney General, an elected official charged with the duty of protecting[367] the public interest, lends support to the reasonableness of the judge's exercise of discretion. See *id.; Commonwealth v. Mass. CRINC*, 392 Mass. 79, 88–90, 466 N.E.2d 792 (1984). Each defendant denied that any incident involving excessive force occurred. Each defendant professed difficulty in identifying which officers were present, although each officer knew all or almost all the other defendants. In such circumstances, the judge was entitled to consider the defendants' lack of candor, as well as their failure to report the incident, in deciding whether sanctions were necessary.

[5] Finally, we consider the defendants' argument that the injunction is overly broad. The judge was warranted in not limiting the injunction to acts involving only John L. Smith, Jr. The problems disclosed by the judge's findings justified both a general prohibition of the use of excessive force and a general imposition of reporting requirements. This case involves intentional misconduct, the application of excessive force to Smith as punishment for his wrongdoing, which was an abuse of the defendants' powers under the law. This case involves defendants who failed to understand that what they did and did not do

was wrong and in violation of police department regulations. This case involves a collective unwillingness to intervene to protect a citizen from the denial of his civil rights by fellow police officers. The imposition of sanctions was wholly justified.

The defendants argue that, if the injunction were issued, they would not be able to perform their jobs properly. We disagree. The prohibition against the use of excessive force places no new restraint on the defendants. It states the law under which in all events the defendants must conduct themselves. The reporting requirements present no personal safety concerns. Boston police department regulations, moreover, require that an officer report crimes and visible injuries incurred in the course of an arrest.

There is, of course, a risk of contempt of court for failing to report knowledge of the use of excessive force by another officer. The sometimes fine line between the proper and necessary use of force and excessive force may be difficult to[368] draw in particular cases. In the circumstances, however, a court order is warranted that tends to help resolve any defendant's doubt about whether excessive force has been used in favor of reporting an incident, leaving it to superior officers to pass judgment on the issue.

There is one matter that may require further consideration by the trial judge. The injunction has no limit in time. In the Commonwealth's prayers for relief, the Attorney General requested an injunction of two years' duration. Because of the Appeals Court's stay of its effectiveness, the injunction has not been in effect for two years. It may be that the attitude and understanding of one or more of the defendants have changed in the year and one-half since the judgment was entered. On motion of one or more defendants or the Attorney General, the trial judge should exercise his discretion as to whether the injunction should continue in effect in its present form and whether there should be any limit on the duration of the injunction. These considerations do not, however, af-

134

fact our conclusion that the judgment should be affirmed.

*Judgment affirmed.*

LIACOS, Chief Justice (concurring in part and dissenting in part).

I agree with the court that the activities of the defendants amounted to a violation of Smith's civil rights, either by direct application of force or through joint venture liability, as found by the trial judge. I write separately for two reasons. The first is to point out that our decision in this case makes clear that, in appropriate cases, a defendant's physical acts or complicity in the acts of another may subject the defendant to liability under the Massachusetts Civil Rights Act, G.L. c. 12, § 11H (1992 ed.) (Civil Rights Act). My second reason for writing is that, although I agree that the defendants were subject to liability under the Civil Rights Act, I do not agree that the scope of the injunction issued by the trial judge was proper.

<sub>1569</sub>In past decisions, this court has suggested that direct violations of an individual's civil rights would not subject a defendant to liability under the Civil Rights Act. See *Longval v. Commissioner of Correction,* 404 Mass. 325, 333, 535 N.E.2d 588 (1989) (unlawful use of force to compel prisoner to do something would not violate the Civil Rights Act because direct violation did not involve threat, intimidation or coercion); *Pheasant Ridge Assocs. Ltd. Partnership v. Burlington,* 399 Mass. 771, 781, 506 N.E.2d 1152 (1987) (legislation which directly eliminates individual's rights, but does not seek to force individual to do or not do something, does not violate the Civil Rights Act). See also *Bally v. Northeastern Univ.,* 403 Mass. 713, 719, 532 N.E.2d 49 (1989), and cases cited (relief typically granted under the Civil Rights Act where there was physical confrontation accompanied by threat of harm). Indeed, not all direct violations of a person's rights should subject the actor to liability under the Civil Rights Act. Under the circumstances of this case, however, where the defendants directly violated Smith's rights, or stood by and allowed such a violation to

occur despite a duty to intervene, and, in addition, were acting out of anger and personal animosity without regard to the existence of Smith's rights, injunctive relief under the Civil Rights Act was warranted. See *Redgrave v. Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 104, 502 N.E.2d 1375 (1987) (O'Connor, J., dissenting, joined by Lynch, J.) (coercion involves restraint or domination of another's will and appears to refer to restraint accomplished by physical force).

While I agree that the defendants violated the Civil Rights Act and that an injunction should have been issued, I do not believe that the injunction issued by the trial judge is consonant with our case law. In discussing the standard for an injunction issued pursuant to the Civil Rights Act, we noted in *Commonwealth v. Guilfoyle,* 402 Mass. 130, 521 N.E.2d 984 (1988), that "[the issuance and scope of equitable relief [granted under the Civil Rights Act] rests within the sound discretion of the judge," and that an injunction under G.L. c. 12, § 11H, being one that promotes the public interest, "is not to be judged by standards applicable to private litigation." *Guilfoyle,*<sub>570</sub> *supra* at 135, 521 N.E.2d 984, citing *Commonwealth v. Mass. CRINC,* 392 Mass. 79, 88–89, 466 N.E.2d 792 (1984). Thus, for example, a showing of irreparable harm by the party seeking the injunction would not be required. See *Mass. CRINC, supra,* at 88–89, 466 N.E.2d 792.

*Guilfoyle* and *Mass. CRINC* do not suggest, however, that other traditional equitable principles would not be applicable in fashioning relief under the Civil Rights Act. Accordingly, the trial judge should have followed cases such as *Lydia E. Pinkham Medicine Co. v. Gove,* 303 Mass. 1, 20 N.E.2d 482 (1939), where this court said:

"Relief by injunction against the defendants ... should be broad enough to prevent recurrence in the future of any of the wrongs found to have been already committed by them and to forestall any other or further wrongs which the proof shows to have been threatened or which the previous conduct of these de-

Cite as 624 N.E.2d 102 (Mass. 1993)

fendants indicates as likely to be committed. It should not, however, extend beyond the scope of the bill, reasonably construed, and should not prohibit acts which there is no reasonable ground to fear will be done."

303 Mass. at 14, 20 N.E.2d 482. See *District Att'y for the Plymouth Dist. v. Selectmen of Middleborough*, 395 Mass. 629, 634, 481 N.E.2d 1128 (1985) (modifying injunction that was too broadly worded); *Brookline v. Goldstein*, 388 Mass. 443, 451, 447 N.E.2d 641 (1983) (vacating injunction and remanding because injunction should be no broader than required to protect plaintiff from harassment by defendant); *Wilson v. Jennings*, 344 Mass. 608, 620, 184 N.E.2d 642 (1962) (modifying decree to conform to bill filed by plaintiff); *R.M. Sedrose, Inc. v. Mazmanian*, 326 Mass. 578, 580–581, 95 N.E.2d 677 (1950) (where plaintiff sought to enjoin the selling of specified items, it was error to enjoin the selling of other items). Furthermore, where public officials are the subject of an injunction, the rule that the injunction should be no more intrusive than necessary to achieve the legally justified result has particular relevance. *Perez v. Boston Hous. Auth.*, 379 Mass. 703, 730, 400 N.E.2d 1231 (1980).

[13] The judge below concluded that "although the defendants all shared the culpability, they did not do so equally. Although the differentiation may be pertinent in later phases of the case, it is immaterial to the present disposition. Whatever a defendant's degree of guilt here, all are subject to restraint against recurrence." Be-

1. I agree with the court that the trial judge properly exercised his discretion in not limiting the injunction to acts involving only Smith.

1. Prior to *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989), courts analyzed excessive force claims under a substantive due process standard. See *Hathaway v. Stone*, 687 F.Supp. 708, 712 (D.Mass. 1988); *Bibbo v. Mulhern*, 621 F.Supp. 1018, 1024 (D.Mass.1985); *Schiller v. Strangis*, 540 F.Supp. 605, 614 (D.Mass.1982), citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Substantive due process cases have held that the conduct must be so egregious as to "shock the conscience" of the court to violate the due process clause. *Temple v. Marlborough*

cause the trial judge was concerned with "recurrence" when he issued his injunction, he exceeded his discretion by not tailoring the injunction to enjoin the defendants from doing what the judge found they actually did. Thus, Waggett, Kelly, Hughes, O'Connor, and Bukoff, the only defendants who, the trial judge specifically found, used physical force, should be enjoined to the extent of the trial judge's original injunction. The remaining defendants, however, should be enjoined only from doing what the trial judge found they actually did: failing to report to the proper authorities her or his knowledge of any visible injury occurring in the course of an arrest, and failing to report to the proper authorities her or his knowledge of the use by any Boston police officer of excessive force while in the performance of such officer's duties.[1]

LYNCH, Justice (concurring).

The United States Supreme Court has held that excessive use of force claims against police officers are properly analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under a substantive due process standard.[1] *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989). *Dean v. Worcester*, 924 F.2d 364, 367 (1st Cir.1991).

The objective reasonableness standard "balances the public interest in effective law enforcement against the intrusiveness of the challenged police action in light of all

*Div. of the Dist. Court Dep't*, 395 Mass. 117, 130, 479 N.E.2d 137 (1985). *Schiller v. Strangis*, *supra*, citing *Rochin v. California*, *supra*. In determining whether substantive due process has been violated, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Schiller v. Strangis*, *supra* at 616, quoting *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), cert. denied sub nom. *Employee-Officer John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

the circumstances disclosed by the evidence." *Dean v. Worcester, supra.* The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.,* quoting *Graham v. Connor, supra* at 397, 109 S.Ct. at 1872. Proper analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor, supra* at 396, 109 S.Ct. at 1872. " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment." *Id.,* quoting *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), cert. denied sub nom. *Employee–Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Indeed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor, supra* at 396–397, 109 S.Ct. at 1872.

I would apply the "objective reasonableness" test of *Graham* in cases arising under the Massachusetts Constitution and G.L. c. 12, §§ 11H-11J, as well. In rendering his judgment, the judge placed great emphasis on the officers' wish to punish Smith. He concluded:

> [573]"These officers violated Smith's civil rights not out of a specific intent to violate them ... but rather from a shared belief that in staging his own version of *Smokey and the Bandit,* Smith had showered a platoon of Boston police officers with disobedience and disrespect, in the process endangering their safety and making fools of them all. Thus they set out to teach this scofflaw a lesson."

The subjective motivations of the individual officers have no bearing on whether the police officers were acting with objective reasonableness. *Graham v. Connor, supra* at 397, 109 S.Ct. at 1872. The other findings of the judge make clear, however, that he would have found that the officers were acting unreasonably apart from their motivation, and, therefore, I see no reason to remand the case for application of the objective reasonableness standard. Furthermore, I have grave doubts concerning the application of joint venture theories of criminal law to police officers undertaking lawful activities which are then carried out in an unlawful manner. Such a theory has never been applied in this Commonwealth in these circumstances nor have I been able to discover any precedent for such application elsewhere. Since the officers here were also found liable for failure to come to Smith's aid, I would sustain the result on this ground alone.

Supreme Judicial Court of Massachusetts, Hampden.
COMMONWEALTH
v.
Edward KLEIN.
Argued April 4, 1977.
Decided June 22, 1977.

Defendant was charged with assault and battery by means of a dangerous weapon, after he shot some escaping burglars. Defendant was found guilty after trial in the Superior Court, Hampden County, Moriarty, J., and the Supreme Judicial Court, on its own initiative, ordered direct appellate review after review had been sought in the appeals court. The Supreme Judicial Court, Hennessey, C.J., held that: (1) the judge charged the jury correctly; (2) the jury was warranted in returning guilty verdicts on the evidence as considered in light of the instructions, and (3) since rules of law as to defendant's right of use of deadly force were being expanded for the first time in the Commonwealth, they would not be applied retroactively against the defendant.

Judgments reversed, verdicts set aside and not guilty judgments ordered.

West Headnotes

[1] KeyCite this headnote

⚖37 Assault and Battery
⚖37II Criminal Responsibility
⚖37II(A) Offenses
⚖37k62 Defenses
⚖37k69 k. Defense of Property. Most Cited Cases

As bearing on whether defendant was justified in doing what he did, defendant used "deadly force" in firing shots from handgun at fleeing burglars; "deadly force" is force intended or likely to cause death or great bodily harm, and such definition tracks with long-standing definition of "dangerous weapon" as instrument likely to produce death or serious bodily injury. M.G.L.A. c. 265 § 15A; c. 266 § 17.

[2] KeyCite this headnote

⚖37 Assault and Battery
⚖37II Criminal Responsibility
⚖37II(B) Prosecution
⚖37k81 Evidence
⚖37k91 k. Weight and Sufficiency in General. Most Cited Cases

⚖37 Assault and Battery
⚖37II Criminal Responsibility
⚖37II(B) Prosecution
⚖37k93 Trial
⚖37k95 k. Questions for Jury. Most Cited Cases

In prosecution for assault and battery, burden was upon Commonwealth to show beyond reasonable doubt that defendant was not justified in his use of deadly force to defend himself, but evidence

371I(A) Offenses
   37k62 Defenses
       37k64 k. Exercise of Authority or Duty. Most Cited Cases

106 Courts
  106II Establishment, Organization, and Procedure
   106II(H) Effect of Reversal or Overruling
      106k100 In General
         106k100(1) k. In General; Retroactive or Prospective Operation. Most Cited Cases

Where defendant was aware that he had citizen's right of arrest and felony was committed in his presence, so that he met standards for justification of his use of firearm, as established for first time on appeal of his case, in all respects except that felons whom he shot were not themselves engaged in crime which threatened death or great bodily harm, defendant would not be held to have had knowledge of the possible criminality of his conduct, and rules thus adopted would not be retroactively applied, and judgments of not guilty of assault were ordered. M.G.L.A. c. 265 § 15A.
**1314 *823 Frederick S. Pillsbury, Springfield, for defendant.
L. Jeffrey Meehan, Sp. Asst. Dist. Atty., for the Commonwealth.

Before HENNESSEY, C.J., and QUIRICO, BRAUCHER, WILKINS and ABRAMS, JJ.

HENNESSEY, Chief Justice.
The defendant, a dentist residing in Springfield, was found guilty by a jury of charges in two indictments. One indictment charged him with assault and battery by means of a dangerous weapon (a firearm) on Napoleon J. LaDue; the other indictment **1315 charged the same offense against John Savageau. G.L. c. 265, s 15A. Both offenses were alleged to have occurred on August 1, 1973. It is undisputed that the defendant shot and *824 wounded the two men after they had in the nighttime broken into a drug store located across the street from the defendant's home. The defendant telephone the police, and after a time went outside his home, armed with a pistol, and the confrontation occurred which gave rise to these indictments.
We hold that the judge charged the jury correctly in this case, as judged in light of principles of law which we in this case adopt governing the right of citizens to use deadly force in attempting to effect the arrest of felons. Further, we conclude that the jury were warranted in returning guilty verdicts on the evidence as considered in light of the judge's instructions to them. Nevertheless, since we are now expounding these rules of law for the first time in this Commonwealth, we also hold that the rules should not be applied retroactively against this defendant. Consequently, we are ordering that judgments of not guilty be entered as to both indictments.
We summarize the evidence most favorable to the Commonwealth, under the established principle that the jury were entitled to credit and accept this evidence to the exclusion of evidence favorable to the defendant. See Commonwealth v. Kelley, --- Mass. ---, --- - ---,[FNa] 346 N.E.2d 368 (1976). The evidence most favorable to the Commonwealth came from certain police officers and Napoleon LaDue, one of the two men who were wounded by the defendant's gunfire.

        FNa. Mass.Adv.Sh. (1976) 1023, 1026--1028.

Napoleon LaDue testified[FN1] that in the early morning hours of August 1, 1973, he and John Savageau went to Sims Drug Store on Allen Street in Springfield, Massachusetts, with the intention of

breaking into the store to steal money and cigarettes. They first attempted to smash the wire and glass window in the door with a tire iron, but were unsuccessful and discarded the tire iron by the side of the door. They found a stone and managed to smash the window by propelling the stone inside.

FN1. The second man who was wounded (Savageau) did not testify.

Both LaDue and Savageau then entered the store through the broken window. LaDue took some change *825 from the cash register and gathered some cartons of cigarettes. While LaDue was near the cash register and Savageau by the cigarettes, LaDue heard shots coming into the store and ran to the back of the room. After the shooting ceased, Savageau, followed by LaDue carrying cigarettes, ran to the broken door and jumped outside. Savageau was not carrying cigarettes. LaDue was a few seconds behind him. Once Savageau went through the door LaDue heard more shots. As he emerged from the store DeDue fell, but retrieved the cigarettes and began to run. While LaDue was running back along the building toward some railroad tracks he heard a shot and was struck in the arm causing him to drop the cigarettes. He ran a few more feet and was struck in the side by another bullet. LaDue testified that he never crossed Allen Street in front of the store, that he never threw anything at anyone, and that he never saw who was shooting. LaDue caught up to Savageau near the railroad tracks, and Savageau indicated that he too had been shot. Savageau had a bullet wound in his elbow. LaDue testified that he never heard anysort of warning or an order to stop before or during the shooting. Finally, LaDue testified that, although he did not know who was shooting at them, he was afraid it was the police.

Springfield police Officer Donald LaDue[FN2] testified that he and Officer Sakowski responded to a radio dispatch concerning a break at Sims Drug Store at approximately 1:55 A.M. on August 1, 1973. On the basis **1316 of previous experience with breaks at that particular store, Officers LaDue and Sakowski chose to go along Amity Court while another patrol car proceeded along Warehouse Street to intercept the thieves on their expected route of escape, rather than going directly to the store. On their arrival at the drug store the officers saw that the upper portion of the entrance door was broken and there was a bullet hole in the lower portion. They also found cigarettes *826 strewn about the sidewalk and street some eight feet away from the store entrance. Both officers observed a tire iron by the door and a stone inside the door. At that time the officers were aware that follow policemen had found LaDue and Savageau, both blooding, in the vicinity of the railroad tracks, and were taking them to a hospital. Officer Sakowski saw a pool of blood inside the store.

FN2. A coincidence in names with the first witness.

While the policemen were making these observations the defendant appeared. After one of the officers mentioned the bullet hole, the defendant responded that he had seen the two thieves break in and he had called the police. Because the police failed to appear, the defendant told the officers that he took his Luger pistol and went into the street where he intercepted the thieves coming out of the store. He stated that he stood in the road and told them to stop or he would shoot. The defendant said that one of the thieves threw cigarettes at him and he fired two shots hitting one of the men, and they went back into the store. He stated that he turned to go to his house to call the police again, and when he reached the tree belt in front of his house he heard a noise. The defendant told Officers LaDue and Sakowski that when the two reappeared he leaned against a tree to steady himself and fired seven more shots at the two thieves as they were running alongside the building.[FN3] He said that he then returned to his house and, after emptying his gun, he called the police again. The defendant also told Officer

140

Sakowski that there had been a break at Sims Drug Store two nights previously when the police failed to catch the thieves, and that he was sleeping downstairs in his den with his gun nearby.

> FN3. From this statement of the defendant, together with other evidence, the jury were warranted in inferring that the defendant shot and wounded the two men as they were running away from the scene and not, as the defendant later testified, running toward him.

The defendant's testimony before the jury differed in important respects from the police version of his statements immediately after the incident. In summary, he *827 testified to firing the shots at the two men as they ran toward him, one carrying a tire and the other carrying an object which the defendant thought was a gun. He also testified that he saw the men break into the store; that his purpose in going out of his house with a gun was to make a citizen's arrest of the two men; and that before he fired the shots he shouted at the men to put their hands up and stand where they were, that they were under arrest.

[1] 1. The central question in this case is whether the defendant was justified in using deadly force. We define deadly force as force intended or likely to cause death or great bodily harm. This tracks with our long-standing definition of a 'dangerous weapon,' viz.: an instrument that is likely to produce death or serious bodily injury. Commonwealth v. Farrell, 322 Mass. 606, 615, 78 N.E.2d 697 (1948). Clearly the defendant in this case used deadly force in firing shots from a handgun.

[2] The defendant's first contention is that his conduct in shooting the two men was justifiable on the ground of self-defense, and that on this ground he was entitled to directed verdicts of not guilty. The judge properly instructed the jury that, the defendant having introduced evidence that he acted in self-defense, the burden of proving beyond a reasonable doubt that he was not justified in his use of deadly force to defend himself rested on the Commonwealth. Commonwealth v. Rodriguez, --- **1317 Mass. ---, --- - ---, [FNb] 352 N.E.2d 203 (1976). It is clear to us that the judge correctly ruled that the defendant was not entitled to directed verdicts of not guilty on the ground of self-defense.

FNb. Mass.Adv.Sh. (1976) 1864, 1875--1876.

The jury were instructed in substance that, in order to create a right to defend oneself with a dangerous weapon likely to cause serious injury or death, it must appear that the person using the weapon had a reasonable apprehension of great bodily harm and a reasonable belief that no other means would suffice to prevent such harm. See Commonwealth v. Kendrick, 351 Mass. 203, 211, 218 N.E.2d 408 (1966); Commonwealth v. Houston, 332 Mass. 687, 690, 127 N.E.2d 294 (1955). Although there was some testimony by the defendant from *828 which the jury could have concluded that the defendant acted reasonably in an attempt to prevent great bodily harm to himself, there was also evidence which warranted the jury in deciding that the defendant did not act in self- defense at all. The testimony of Napoleon LaDue tended to negate the claim of self-defense. Also, the defendant himself stated in substance to the police on the night of the incident that he shot the two men, not as they were attacking or threatening him, but as they were escaping from the scene.

Considering the jury's privilege to accept or reject evidence selectively, there was ample basis for them to reject (as they obviously did) the defendant's claim of self-defense, either on the basis that the defendant was not under attack at all, or on the ground that he used excessive force to defend himself in the circumstances. There was evidence which, if believed, supported either conclusion.

2. We turn now to consideration of the defendant's claim that he was justified in using deadly force to prevent the escape of the two men from his attempt to make a citizen's arrest.

The defendant's arguments as to citizen's arrest are three in number. First, he contends that he was entitled on this ground to directed verdicts of not guilty. Second, he says that he is entitled at least to a new trial because the judge's charge to the jury was in error as too restrictive in its definition of the defendant's rights in the circumstances of this case. The third contention is that the law applicable to the citizen's right to use deadly force in arresting a felon has never been expounded in this Commonwealth. Therefore, the defendant says that, if he acted excessively in light of the applicable law as decided in this case, that law cannot fairly be applied retroactively to his detriment.

In a few instances, this court has considered the broad issue of the use of excessive force in effecting an arrest. Commonwealth v. Lussier, 333 Mass. 83, 92--93, 128 N.E.2d 569 (1955); *829 Commonwealth v. Young, 326 Mass. 597, 96 N.E.2d 133 (1950); Powers v. Sturtevant, 199 Mass. 265, 85 N.E. 84 (1908); Commonwealth v. Cheney, 141 Mass. 102, 6 N.E. 724 (1886); Commonwealth v. Presby, 14 Gray 65 (1859); Commonwealth v. Goodwin, 3 Cush. 154 (1849). However, it is true, as the defendant contends, that we have never clearly set the limits of the arresting citizen's right to use deadly force.

[3] Thus, we must consider in this context what rules of law will best serve the public interest in this Commonwealth. Our common law has long recognized a private citizen's right to arrest. Commonwealth v. Lussier, 333 Mass. 83, 92, 128 N.E.2d 569 (1955). Nevertheless, limits must be set, as to the use of deadly force, against the dangers of uncontrolled vigilantism and anarchistic actions (cf. Commonwealth v. **1318 Mahnke, 368 Mass. ---, [FNc] 335 N.E.2d 660 (1975), cert. denied, 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976)), and particularly against the danger of death or injury of innocent persons at the hands of untrained volunteers using firearms. In our view, for example, there would be no wisdom in approving the unqualified right of a private citizen to use deadly force to prevent the escape of one who has committed a crime against property only.[FN4]

FNc. Mass.Adv.Sh. (1975) 2897.

FN4. Consider for example, the case of a person who has stolen a bicycle from a building and is attempting to escape. The crime is a felony stealing in a building; G.L. c. 266, s 17); yet the police which forbids the use of gunfire to prevent the escape is a sound one.

[4] Some jurisdictions have adopted such limiting rules. See 32 A.L.R.3d 1072--1077, Annot., 1078--1119 (1970). In Commonwealth v. Chermansky, 430 Pa. 170, 242 A.2d 237 (1968), for example, it was held that the prerequisites to justify the use of deadly force by a private person in order to effect the arrest or prevent the escape of a felon are that the person must be in fresh pursuit of the felon and that he must give notice of his purpose to make the arrest for the felony if the attendant circumstances are themselves insufficient to warn the felon of the intention of the pursuing party to arrest him; that such felony must actually have been committed by the person against whom the force *830 is used; And the felony must be one which normally causes or threatens death or great bodily harm.[FN5]

FN5. The Pennsylvania court, at 173--174, 242 A.2d 237 Included,

among such felonies, the crimes of treason, murder, voluntary manslaughter, mayhem, arson, robbery, common law rape, common law burglary, kidnapping, and assault with intent to murder, rape, or rob.

We have examined comparable law elsewhere, and we think the relevant provisions of the Model Penal Code will best serve this Commonwealth. These provisions were adopted after extensive debate

among knowledgeable and distinguished contributors. In the past we have relied on portions of the code of clarify vague areas of our criminal law. See Alegata v. Commonwealth, 353 Mass. 287, 304, 231 N.E.2d 201 (1967). Accordingly, we establish as the law of Massachusetts the rules (in so far as they are material to the instant case [FN6]) as found in s 3.07 of the Model Penal Code (Proposed Official Draft 1962). They are as follows:

> FN6. In this case we decide the issues only as they concern a private citizen making an arrest, although s 3.07 of the Model Penal Code is in most respects applicable to peace officers as most respects applicable to peace officers as well.

'Section 3.07. Use of Force in Law Enforcement.
'(1) Use of Force Justifiable to Effect an Arrest. Subject to the provisions of this Section and of Section 3.09, the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest.
'(2) Limitations on the Use of Force.
'(a) The use of force is not justifiable under this Section unless:
'(i) the actor makes known the purpose of the arrest or believes that it is otherwise known by or cannot reasonably be made known to the person to be arrested; and
'(ii) when the arrest is made under a warrant, the warrant is valid or believed by the actor to be valid.
'(b) The use of Deadly force (emphasis supplied) is not justifiable under this Section unless:
'(1) the arrest is for a felony; and
*831 '(ii) the person effecting the arrest is authorized to act as a peace officer or is assisting a person whom he believes to be authorized to act as a peace officer; and
'(iii) the actor believes that the force employed creates no substantial risk of injury to innocent persons; and
**1319 '(iv) the actor believes that:
'(1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or
'(2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed.'[FN7]

> FN7. The American Law Institute's Model Code of Pre-Arraignment Procedure (1975) carried forward the determinations of the Institute in s 3.07 of the Model Penal Code regarding the use of force and of deadly force in making an arrest. In summary, s 120.7 of the Model Code of Pre- Arraignment Procedure provides that a law enforcement officer authorized to make an arrest may use such force as is reasonably necessary to effect the arrest, and the officer may use deadly force only if (a) the arrest is for a felony; (b) the officer reasonably believes that the force employed creates no substantial risk to innocent persons; and (c) the crime for reasonably believes that (1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or (2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed.

[5] We further hold that, since the right of the defendant to arrest and prevent the escape of the victims was raised in the evidence, the burden of disproving this defense beyond a reasonable doubt rested on

the Commonwealth. See Commonwealth v. Rodriguez, 370 Mass. ---[FNd], 352 N.E.2d 203 (1976).

FNd. Mass.Adv.Sh. (1976) 1864.

The judge's instructions to the jury in this case were, in most important respects, consistent with the rules of the Model Penal Code quoted above. He charged in substance that deadly force could not be used to effect the arrest or prevent the escape of one who had committed a felony concerned with property only.

[6] As measured by the principles which we have now established and the judge's charge, it is clear that the Commonwealth met its burden of proving beyond a reasonable *832 doubt that the shootings were not justified. [FN8] There was evidence which tended to show that, even though the victims had been engaged in a serious crime, it was a crime concerned with property only and entailed no threat of death or great bodily harm.[FN9] Thus, under the rules of law that we have established here, the guilty verdicts were clearly warranted over the defendant's claim of justification.

FN8. The issue presented in this case is a narrow one: whether deadly force can be used to prevent the flight from arrest of persons who have committed crimes concerned with property only. It is probably useful to

stress some of the issues with which we are not concerned here. For example, this is not a case involving physical resistance to arrest. Almost inevitably, principles relating to self-defense are involved in such a case. We have said that the person attempting a valid arrest has the right to use the force which is reasonably necessary to overcome physical resistance by the person sought to be arrested. Powers v. Sturtevant, 199 Mass. 265, 266, 85 N.E. 84 (1908). See Commonwealth v. Young, 326 Mass. 597, 602, 96 N.E.2d 133 (1950) (deadly force). Cf. Commonwealth v. Martin, --- Mass. ---, --- (Mass.Adv.Sh. (1976) 335, 350), 341 N.E.2d 885 (1976); Commonwealth v. Kendrick, 351 Mass. 203, 210--212, 218 N.E.2d 408 (1966) (manifestly disproportionate force).

Likewise, we do not face here the issue of the right of the person attempting an arrest to carry a gun or other dangerous weapon, whatever the nature of the crime which gave rise to the right of arrest. The likelihood of a violent confrontation and a consequent necessity for self-defense by the person making the arrest are factors to be considered in such a case.

Finally, in so far as the defendant's assertion that he was entitled to directed verdicts of not guilty is concerned, the instant case is not concerned with the Protection of property. The jury were warranted in concluding that the wounding of the two men occurred after the crime involving the drug store. See, e.g., the provisions in the Model Penal Code

concerning the protection of property, particularly s 3.06(3)(d), and the justification of the use of deadly force to resist an unlawful attempt to dispossess an owner of his dwelling, or to prevent an act of arson, burglary, or other act of felonious theft or property destruction.

FN9. The felony was that of breaking and entering with intent to commit a felony, or larceny in a building. There were no occupants, owner or otherwise, in the building at the

time. If the crime had involved a dwelling house the threat of death or great bodily harm should be presumed, whether or not it was shown that there were actually occupants in the house at the time of the crime.

[7] **1320 3. We now consider the defendant's argument that the state of the law at the time of the occurrence of this incident in 1973 was such that a reasonable man, with knowledge of the law, would be led to believe that a private *833 person would have the right to use such force as was necessary, including deadly force, to effect the arrest or prevent the escape of a person who committed a felony in his presence.

It is true that sometimes, even in a case of first impression, common law standards of criminality not previously defined are applied against a defendant. In some cases it can fairly be said that the defendant knew of the 'possible criminality' of his conduct. Mullaney v. Wilbur, 421 U.S. 684, 690 n. 10, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). It is not necessary that courts, interpreting the common law, be able to point to a decided case exactly similar as to its facts. Commonwealth v. Henson, 357 Mass. 686, 690--694, 259 N.E.2d 769 (1970); Bouie v. Columbia, 378 U.S. 347, 356, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); W. Clark & W. Marshall, Crime s 1.03 at 21 (7th ed. 1976).

In other cases the circumstances are such that new standards are held in fairness not to be applied retroactively against a defendant. See Commonwealth v. Chermansky, 430 Pa. 170, 171, 242 A.2d 237 (1968); cf. Commonwealth v. Orlando, --- Mass. ---, ---[FNe], 359 N.E.2d 310 (1977). In some instances such retroactive applications have been held to be violative of the due process clause of the United States Constitution. Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

FNe. Mass.Adv.Sh. (1977) 84, 86.

We conclude that, in the circumstances of this case, the standards we have now established should not be applied retroactively. We reach this conclusion through considerations of fairness; it cannot fairly be said that the defendant was on notice of the possible criminality of his conduct. We need not consider whether, additionally, a retroactive application of the law to the defendant might be violative of his constitutional right to due process of law.

The defendant was aware that he had a citizen's right of arrest; the felony was committed in his presence;[FN10] it could fairly be said that there was evidence that he gave *834 notice to the two men that he intended their arrest and that he was assisting the police (whom the defendant had called) by attempting to prevent the escape of the men. He met the standards for justification of his use of the firearm (as we now for the first time establish them) in all respects except that the felons were not themselves engaged in a crime which threatened death or great bodily harm.

FN10. We have said that a private person may lawfully arrest one who in fact has committed a felony. Commonwealth v. Lussier, 333 Mass. 83, 92, 128 N.E.2d 569 (1955).

In these circumstances the defendant should not be held to have had knowledge of the 'possible criminality' of his conduct (see Mullaney v. Wilbur, supra), and the law should not be applied retroactively against him. His judgment was undoubtedly poor; his conduct could justly be called

rash. Nevertheless his intent was to assist the cause of law enforcement; on the evidence, no lawless motive or malicious spirit can be attributed to him.

In the interest of curbing the promiscuous use of firearms, and the unnecessary and dangerous use of deadly force in the community, we have now set limits applicable to arrests by private persons. The defendant can be held to have used excessive force only in light of the fact that the felons here were not themselves engaged in the use of threatened use of deadly force in their crimes directed against the drug store. Public knowledge of this somewhat subtle requirement of the law, a requirement **1321 which we shall apply in the future, should not be charged against the defendant retroactively.

4. Since the Commonwealth had the burden of disproving, by proof beyond a reasonable doubt, the defendant's assertion of justification, and, since we have concluded that he is not to be charged retroactively with the rules we have established in this opinion, it follows that in the circumstances of this case, as matter of law, the Commonwealth has not met its burden. The judgments are reversed and the verdicts set aside. Judgments of not guilty shall be entered as to both indictments.

So ordered.

Mass. 1977.

Com. v. Klein,

END OF DOCUMENT

Copr. (C) West 2001 No Claim to Orig. U.S. Govt. Works