UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11385 JLT

D'ANN McGILL,
        <u>Plaintiff</u>

v.

CITY OF BOSTON and
CHRISTOPHER HAMILTON,
        <u>Defendants.</u>

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF THE X-RAYS TAKEN OF THE PLAINTIFF'S ALLEGED INJURY ON AUGUST 12, 2002, SEPTEMBER 25, 2002, AND JUNE 30, 2004 OR IN THE ALTERNATIVE MOTION IN LIMINE FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE</u>**

Defendant City of Boston Police Sergeant Christopher Hamilton ("Sgt. Hamilton") and the Defendant City of Boston (the "City") hereby move this Honorable Court to compel the Plaintiff to produce the X-rays taken of her alleged injuries on August 12, 2002, September 25, 2002, and June 30, 2004.  In the alternative, the Defendants move this Court for an order precluding the Plaintiff from offering any testimony or evidence regarding her having suffered a fractured right wrist.

I.      **PROCEDURAL BACKGROUND**

In her Complaint, the Plaintiff alleges that due to excessive force on the part of Sgt. Hamilton she suffered a fractured right wrist.  The Plaintiff complained to the City of Boston Internal Affairs Department ("IAD") that her wrist was bruised and sprained on August 13, 2002.  (<u>See</u> IAD Complaint, attached as Exhibit A).

According to medical records produced by the Plaintiff with her automatic disclosure, X-rays were taken of the Plaintiff's right wrist on five separate occasions, which include films taken on August 12, 2002, the day after the alleged incident, and films taken on September 25, 2002, October 23, 2002, November 13, 2002, and June 30, 2004.

On December 22, 2006, the Defendants obtained what it was told by the Plaintiff was a complete copy of her X-rays and MRI's.  (See Affidavit of Defendants' Attorney Elizabeth L. Bostwick ("Attorney Bostwick"), attached as Exhibit B).  The Defendants delivered these films to a physician for his review.  (Id.).  Shortly after delivering these films, the Defendants learned from their expert that the Plaintiff had only provided them with her MRI films and that none of the five different sets of X-rays were produced. (Id.).  On January 3, 2007, Attorney Bostwick spoke with Attorney for the Plaintiff, Veronica White ("Attorney White"), and inquired as to the whereabouts of the missing X-rays.  (Id.).  Attorney White stated that she would contact Dr. William J. Doherty's ("Dr. Doherty") office in order to obtain the X-rays and get back to Attorney Bostwick. (Id.).  On January 4, 2007, Attorney White informed Attorney Bostwick that she had made a request for the X-rays and would call Dr. Doherty's office to see if they could expedite the request.  (Id.).

On January 5, 2007, the Defendants filed an Assented to Motion for Extension of Time to January 31, 2007 to Obtain All the Plaintiff's X-rays and to Designate Medical Expert.  (See Assented to Motion for Extension of Time to January 31, 2007 to Obtain All the Plaintiff's X-rays and to Designate Medical Expert, attached as Exhibit C).  The Court allowed this motion on January 8, 2007.

On January 16, 2007, Attorney White informed Attorney Bostwick that she had contacted the keeper of records for Dr. Doherty's office and that they did not have the X-rays in question.  (See Exhibit B).  Attorney White stated that she would contact the hospital where the X-rays were taken to see if they had copies.  (Id.).  On January 18, 2007, Attorney White informed Attorney Bostwick that she had made another request for the X-rays to Dr. Doherty's office and to the Plaintiff's medical providers.  (See Exhibit B).  Attorney White further agreed to have her client sign Health Insurance Portability and Accountability Act ("HIPPA") complaint releases so that the City could obtain the missing films directly.  (Id.).  The City faxed HIPPA complaint releases to the Plaintiff's attorney for Hallmark Health-Lawrence Memorial Hospital ("LMH"), Orthopedic Surgery Inc./Dr. Doherty ("Dr. Doherty's office"), and Outpatient Occupational Therapy-Lawrence Memorial Hospital ("Outpatient Occupational").  Because the Plaintiff's attorney was still attempting to obtain the X-rays, Attorney Bostwick informed her that the Defendants would refrain from filing a motion to compel in the hopes that the records would be obtained within the following week.  (Id.).

On January 31, 2007, the Defendants filed an Assented to Motion for Extension of Time to February 28, 2007 to Designate Expert Witness and Issue Subpoenas to Obtain Records.  (See Assented to Motion for Extension of Time to February 28, 2007 to Designate Expert Witness and Issue Subpoenas to Obtain Records, attached as Exhibit D).  The Court allowed the Defendants' motion on February 6, 2007.

On February 15, 2007, the Defendants received releases signed by the Plaintiff for: 1) Dr. Doherty's office; 2) LMH; and 3) Outpatient Occupational.  The releases authorized these medical providers to disclose the Plaintiff's X-rays and MRIs.  The

releases were sent along with subpoenas to the appropriate medical providers on the morning of February 16, 2007.

On the afternoon of February 16, 2007, Attorney White informed the Defendants that she had found the missing X-rays at Dr. Doherty's office. (See Exhibit B). The X-rays that were found were received by the Defendants on February 20, 2007. (Id.). However, upon reviewing the X-rays it was determined that none of the X-rays taken close in time to the alleged incident were produced. X-rays taken on August 12, 2002 and September 25, 2002 were not produced. (Id.). The X-rays taken on June 30, 2004 were also not produced. (Id.). On the morning of February 21, 2007, the Defendants sent a letter to the Plaintiff inquiring as to these missing X-rays and stating that if the missing X-rays were not produced they would file a motion to compel or in the alternative a motion to exclude any evidence of a fracture to the Plaintiff's wrist based on a spoliation theory. (See Letter to Plaintiff's Attorneys dated February 21, 2007, attached as Exhibit E).

On the afternoon of February 21, 2007, the Defendants received responses to the subpoenas they sent to LMH and Outpatient Occupational. In response to its subpoena, LMH stated that they had no X-rays in their custody because the Plaintiff "signed a form to pick up her film; she filled out the form on 8-13-2002 and picked up the film on 8-14-2002. Jane in the radiology department stated to me that she never returned the film." (See LMH's response to subpoena, attached as Exhibit F). On February 26, 2007, the Defendants received a response to its subpoena sent to Dr. Doherty's office. This response only included the three sets of X-rays that had been previously produced by the Plaintiff. A note was included in this response that indicated that the X-rays taken on

September 25, 2002 could not be located. (See note received from Dr. Doherty's office in response to subpoena, attached as Exhibit G). The X-rays taken on August 12, 2002 were not listed as ever being in the custody of Dr. Doherty's office.

On February 28, 2007, Plaintiff's Attorney J. Thomas Kerner ("Attorney Kerner") informed Attorney Bostwick that Dr. Doherty's office had told him that the Plaintiff had signed out the August 12, 2002 X-ray after they had reviewed it and had not returned it. (See Exhibit B). On February 28, 2007, the Defendants hand delivered an expert report written by Dr. Joseph S. Barr, Jr. ("Dr. Barr") to the Plaintiffs. (See Dr. Barr's expert report, attached as Exhibit H). In this report Dr. Barr states that he was able to review X-rays from October 23, 2002, November 13, 2002, and December 11, 2002 and was not able to see any evidence of a past fracture or healing fracture in the Plaintiff's right wrist. (Id.). Dr. Barr further states that he reserves the right to supplement his report if and when the original X-rays of August 12, 2002 are made available for his review. (Id.) To date, this office has not received any of the missing X-rays. (See Exhibit B).

## II.     ARGUMENT

### A.     The Plaintiff Should Be Required To Produce A Complete Set Of All X-rays Taken Of Her Alleged Injury.

Pursuant to Fed.R.Civ.P. 26 (B) the Plaintiff is required to produce "a copy of [ ] all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses . . ." The Plaintiff has failed to produce any of the X-rays that were taken of her alleged injury within the two months after the alleged incident of August 12, 2002. Medical records indicate that the X-rays taken the day after the alleged incident on August 12, 2002, and films taken on September 25, 2002 have all not been produced.

Furthermore, X-rays taken on June 30, 2004, have also not been produced.  A response to the subpoena sent to LMH reveals that the Plaintiff signed out all of her X-rays on August 14, 2002 and never returned them.  (See Exhibit F).  Additionally, a note from Dr. Doherty's office indicated that the X-rays from September 25, 2002 could not be located. (See Exhibit G).  Furthermore, Dr. Doherty's office informed Plaintiff's counsel that the Plaintiff had signed out her August 12, 2002 X-rays and not returned them.  (See Exhibit B).  These two subpoena responses, coupled with Dr. Doherty's statement, indicate that the X-rays taken the day after the alleged incident were last located within the Plaintiff's actual custody.

Clearly, these missing X-rays are documents that support the Plaintiff's claims or defenses and as such they should have been produced.  If the missing X-rays are not produced the Defendants will be prejudiced in that their medical expert will not be able to review the most critical X-rays taken of the Plaintiff's alleged injuries; those that were taken within the two months directly after the alleged incident.  Accordingly, the Defendants move this Court to Order that the Plaintiff immediately produce the X-rays that were taken of her alleged injury on August 12, 2002, September 25, 2002 and June 30, 2004.  The Defendants further move this Court to allow its expert to supplement his report once these X-rays are received and reviewed.

**B.**      **The Defendants Are Entitled To Sanctions Based On The Plaintiff's Spoliation Of Relevant Evidence.**

If the Plaintiff is unable to produce the missing X-rays in a timely enough fashion for the Defendants' expert to review them and supplement his expert report prior to the

scheduled trial date of March 19, 2007, the Defendants ask this Court to issue an order

precluding the Plaintiff from offering any documents or testimony regarding a fractured

wrist.

> **1. The Plaintiff Should Be Precluded From Offering Any Evidence Regarding Her Fractured Wrist Because The Defendants Will Be Severely Prejudiced By Such Evidence And Because Of Her High Degree Of Fault In "Losing" Relevant X-rays.**

Litigants have a responsibility to ensure that relevant evidence is protected from

loss or destruction. Perez v. Hyundai Motor Co., 440 F.Supp. 57, 61 (D.P.R. 2006). This

obligation pre-dates the filing of the actual complaint and arises when litigation is first

reasonably anticipated. Id. Litigation is first reasonably anticipated when the evidence

indicates that the party is aware of the circumstances that are likely to give rise to future

litigation. Blinzler v. Marriott International, Inc., 81 F.3d 1148, 1159 (1996).

District Courts in the First Circuit have considered the following five factors in

determining whether sanctions for spoliation are appropriate: "(1) whether the defendant

was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice

can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in

good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded."

N. Assurance v. Ware, 145 F.R.D. 281, 283 (D. Me. 1993). See also Vazquez-Corales v.

Sea-Land Serv., Inc., 172 F.R.D. 10, 13 (D.P.R. 1997); Mayes v. Black & Decker (U.S.),

Inc., 931 F.Supp. 80, 83 (D.N.H. 1996); Allstate Ins. Co. v. Creative Env't Corp., 1994

WL 499760, *6, 28 (D.R.I. 1994) (Lovegreen, Mag. J.); Headley v. Chrysler Motor

Corp., 141 F.R.D. 362, 365 (D. Mass. 1991).

The First Circuit has not yet explicitly adopted these five factors. However, out

of these five factors, the First Circuit places the most emphasis on the "prejudice to the

non-offending party and the degree of fault of the offending party." <u>Collazo-Santiago v. Toyota Motor Corp.</u>, 149 F.3d 23, 29 (1st Cir. 1998). Of these two factors, the First Circuit has implied that it weighs prejudice more heavily than bad faith. <u>See Trull v. Volkswagen of Am.</u>, 187 F.3d 88, 95 (1st Cir. 1999); <u>Sacramano v. Bridgestone/Firestone, Inc.</u>, 106 F.3d 444, 446 (1st Cir. 1997) (noting absent willful destruction, primary aim of doctrine is remedial). "Bad faith is not essential. If . . . evidence is mishandled through carelessness, and the other side is prejudiced . . . the district court is entitled to consider imposing sanctions, including exclusion of the evidence." <u>Sacramano</u>, 106 F.3d at 447. The measure of the appropriate sanctions depends on the severity of the prejudiced suffered. <u>Id</u>. at 448.

Here, the facts surrounding the "lost" X-rays warrant the preclusion of any testimony or evidence regarding a fractured right wrist. The Plaintiff has not produced any of the X-rays taken of her alleged injury within the first two months after the incident. Additionally, she has not produced the last set of X-rays taken of her alleged injury on June 30, 2004. These X-rays are highly relevant, because they constitute the only direct evidence that supposedly demonstrates that the Plaintiff's wrist was fractured on August 12, 2002, the day after the alleged incident. Sgt. Hamilton will be severely prejudiced if this trial is allowed to go forward without Dr. Barr having been given the opportunity to examine these crucial X-rays and no curative measures are taken. To allow such evidence to be presented at the trial with no remedial measures would enable the Plaintiff to put forth evidence of a fracture without giving Sgt. Hamilton even an opportunity to contest that finding. Dr. Barr has indicated in his report that the later X-rays do not even depict a healed fracture but he will not be able to counter Dr. Doherty's

assertion that the earlier X-rays depict a fracture without having reviewed them.  (See Exhibit H).  The Defendants will also be limited in their ability to cross examine Dr. Doherty.  Clearly, this type of severe prejudice is the type that warrants precluding the Plaintiff from offering evidence of her fracture.  Cf. Driggin v. American Security Alarm Co., 141 F. Supp. 2d 113, 122 (2000) (fact that one of party's experts was able to observe burn patterns on floorboards and other expert able to look at photographs of same floorboards mitigated prejudice of other party destroying floorboards).

Furthermore, sanctions are warranted because it is the Plaintiff's fault that at least one of the X-ray sets is missing.  The Plaintiff signed out all of her X-rays on August 14, 2002 and never returned those X-rays back to any of her medical providers.  (See Exhibit F).  This was after she had already filed her IAD Complaint where she only complained of a bruise and sprain.  (See Exhibit A).  Additionally, Dr. Doherty's office, in their response to the Defendants' subpoena, did not list the X-ray taken on August 12, 2002 as ever having been in his office's custody.  (See Exhibit G).

Furthermore, Dr. Doherty stated that the Plaintiff signed out the August 12, 2002 X-ray after he reviewed it.  (See Exhibit B).  As of the time that the Plaintiff signed out the August 12, 2002 X-rays and/or received the August 12, 2002 X-ray from Dr. Doherty's office she was aware of the circumstances that would later give rise to the present litigation and accordingly had a duty to preserve them.  See Blinzler, 81 F.3d at 1159.  Her having already filed her IAD Complaint further demonstrates this.  See id. Because the X-ray taken the day after the alleged incident was "lost" while it was in the Plaintiff's actual custody this Court should issue an order precluding the Plaintiff from offering any evidence at trial as to her fractured wrist.  See Small, 2006 WL at 29 (no

sanctions imposed where plaintiff "never had an opportunity to 'lose' or otherwise mishandle evidence in question); Vazquez-Corales, 172 F.R.D. at 15 (sanctions imposed were plaintiff sold truck that was subject of lawsuit while truck was in its custody); Sacramano, 106 F.3d at 447 (noting it was "not entirely surprising that the district court ruled that the plaintiff was responsible for the damage where altered wheel in custody of plaintiff's counsel or one of his experts at time of alleged damage).

III.    CONCLUSION.

For the foregoing reasons, the Defendants respectfully request that this Honorable Court allow their motion to compel the Plaintiff to immediately produce the X-rays taken of the Plaintiff's alleged injuries on August 12, 2002, September 25, 2002, and June 30, 2004.  In the alternative, the Defendants move this Court for an order precluding the Plaintiff from offering any testimony or evidence regarding her having suffered a fractured right wrist.

Respectfully Submitted,
DEFENDANTS, CHRISTOPHER
HAMILTON and CITY OF BOSTON

William F. Sinnott
Corporation Counsel

By their attorney:

/s/ Bernard D. Posner
_____
Bernard D. Posner, BBO # 659020
Elizabeth L. Bostwick, BBO # 644498
Assistant Corporation Counsel
City of Boston Law Department
Room 615, Boston City Hall
Boston, MA 02201
(617) 635-4046 (BDP)
(617) 635-2902 (ELB)

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)</u>

Pursuant to L.R. D. Mass. 7.1(A)(2), I hereby certify that counsel for the

Defendants has communicated with counsel for the Plaintiff in the above-entitled action

and that we were unable to resolve or narrow the issues prior to filing the above motion.


/s/ Bernard D. Posner

_____

Bernard D. Posner

| Complaint #: | Date: | Day: | Military Time: | Location Complaint Received: | | How Complaint Received: |
|---|---|---|---|---|---|---|
| 4687 | | | | | | □ In Person ☒ Mail □ Telephone |

Complaint (see code on reverse):
(1) PHYSICAL                                    B.

| Area/Dist. of Occurrence: | Date: | Day: | Military Time: | Address/Location: |
|---|---|---|---|---|
| ONE | 8/11/02 | SUN | 0240 | WASHINGTON / ESSEX |

| Name (Last, First, Middle Initial): AKA SADIE ANN HEASTON | Sex: □M ☒F | Race (see code on reverse): B | D.O.B/Age: 4/30/52 | Result of: □ Parking Violation ☒ Arrest □ Traffic Citation □ Injury □ Other |
|---|---|---|---|---|
| McGILL ANN HEASTON | | | | |

Address: 27 LINCOLN ST. W. MEDFORD          Marital Status: S     Occupation: PUBLIC REL

| Place of Employment: UNEMPLOYED | Telephone #: (H) (781) 643 2477 (W) ( ) | Hours |
|---|---|---|

| Name of Employee Complained Against: HAMILTON, CHRISTOPHER | Status: ☒S □C | Rank: P.O. | I.D. #: | Badge: | Area/Dist./Unit: ONE |
|---|---|---|---|---|---|

| D.O.B/Age: | Sex: ☒M □F | Race (see code on reverse): W | Height: | Weight: | Build: | Eyes: | Hair: | Date of Appt.: | Tour: |
|---|---|---|---|---|---|---|---|---|---|

| Name of Employee Complained Against: | Status: □S □C | Rank: | I.D. #: | Badge: | Area/Dist./Unit: |
|---|---|---|---|---|---|

| D.O.B/Age: | Sex: □M □F | Race (see code on reverse): | Height: | Weight: | Build: | Eyes: | Hair: | Date of Appt.: | Tour: |
|---|---|---|---|---|---|---|---|---|---|

| Name: APRIL SMITH | Sex: □M ☒F | Race (see code on reverse): B | D.O.B/Age: 4/17/84 | Occupation: SELF EMPLOY |
|---|---|---|---|---|

| Address: 22 HAMMOND ST. ROXBURY APT. 1A | Telephone #: (H) (617) 821 7405 (W) ( ) | Hours |
|---|---|---|

Place of Employment:          Relation to Complainant:

| Officer Receiving Complaint: LT. J. CHIN | Area/Dist. Assigned: ONE | I.D. #: 7321 | Superior Officer Assigned to Investigate: | I.D. #: |
|---|---|---|---|---|

Internal Affairs Notified □YES □NO
    Pursuant to Rule 109 S45          Person Notified: E. HANSFORD          By Whom: LT. CHIN

I.D. Officer Assigned To Investigate:

| I.D. Complaint Code (see reverse): 1.  B.  1. | Military Time: | Date: | Signature of Complainant if Complaint Resolved at Time of Complaint: | Date: |
|---|---|---|---|---|

Narrative:

MS. McGILL STATED OFFICER HANDCUFF HER RIGHT WRIST TOO TIGHT, DURING ARREST PROCESS. MS. McGILL DID NOT REPORT THIS INJURY DURING THE BOOKING PROCESS OR DURING HER DETENTION. AFTER BAILED FROM COURT, MS. McGILL WENT TO DOCTOR AND WAS TREATED FOR BRUISE AND SPRAIN. OFFICER HAMILTON CALL MS. McGILL A "BITCH" AND "MOTHERFUCKER" DURING THE ARREST.

Original 1920 must be forwarded
to I.A.D. on the day received          Complainant Should Sign at End of Narrative: UNABLE TO SIGN

ID Form 1920 form6    rev. 2/89

Original - Internal Affairs      Green - Commanding Officer of Individual Complained Against      Blue - Investigating Officer      Pink - Complainant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11385 JLT

D'ANN McGILL,
        Plaintiff

v.

CITY OF BOSTON and
CHRISTOPHER HAMILTON,
        Defendants.

**AFFIDAVIT OF ELIZABETH L. BOSTWICK**

1.  My name is Elizabeth L. Bostwick.  I represent the City of Boston and
    Sergeant Christopher Hamilton in the above case.

2.  On December 22, 2006, the Defendants obtained what it was told by the
    Plaintiff was a complete copy of her X-rays and MRI's.  The Defendants
    delivered these films to a physician for his review.

3.  Shortly after delivering these films, the Defendants learned from its expert
    that the Plaintiff had only provided him with her MRI films and that none of
    the five different sets of X-rays were produced.

4.  On January 3, 2007, I spoke with Attorney for the Plaintiff, Veronica White
    ("Attorney White") and asked about the missing X-rays.  Attorney White
    stated that she would contact Dr. William J. Doherty's ("Dr. Doherty") office
    in order to obtain the X-rays and get back to me.

5.  On January 5, 2007, Attorney White informed me that she had made a request
    for the X-rays and would call Dr. Doherty's office to see if they could
    expedite the request.

6.  On January 16, 2007, Attorney White informed me that she had contacted the
    keeper of records for Dr. Doherty's office and that they did not have the X-
    rays in question.  Attorney White further stated that she would contact the
    hospital where the X-rays were taken to see if they had copies.

7.  On January 18, 2007 Attorney White informed me that she had made another
    request for X-rays to Dr. Doherty's office and to her medical providers.
    Attorney White further agreed to have her client sign Health Insurance

Portability and Accountability Act ("HIPPA") compliant releases so that the City could obtain the missing films directly. I informed Attorney White that the Defendants would refrain from filing a motion to compel in the hopes that the records would be obtained within the following week.

8. On the afternoon of February 16, 2007, Attorney White informed me that she had found the missing X-rays at Dr. Doherty's office.

9. I received the X-rays that were found on February 20, 2007, and after reviewing them I determined that X-rays taken on August 12, 2002, September 25, 2002 and June 30, 2004 were not produced.

10. On February 28, 2007, Plaintiff's Attorney J. Thomas Kerner ("Attorney Kerner") informed me that Dr. Doherty's office had told him that the Plaintiff had signed out the August 12, 2002 X-ray after they had reviewed it and had not returned it.

11. To date, the Defendants have not received any of the missing X-rays.

Signed under the pains and penalties this 2nd day of March 2007.

/s/ L. Bostwick

_____

Elizabeth L. Bostwick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11385 JLT

D'ANN McGILL
      Plaintiff

v.

CITY OF BOSTON and
CHRISTOPHER HAMILTON
      Defendants

**THE CITY OF BOSTON'S EMERGENCY ASSENTED TO MOTION FOR
ADDITIONAL TIME TO OBTAIN ALL THE PLAINTIFF'S X-RAYS and To
DESIGNATE A MEDICAL EXPERT**

The City of Boston moves this Court for additional time until January 31, 2007, to obtain all of the plaintiff's x-rays and have them reviewed by a medical doctor.  The City brings this motion with the assent of the plaintiff.  Counsel for the City has learned that not all of the plaintiff's x-rays have been obtained and she seeks additional time to obtain those records, have them reviewed and to designate a medical expert.

In support of this request, the City states:

1. On December 22, 2006, the City obtained the plaintiff's x-rays/MRIs from plaintiff's counsel's office and delivered these to its doctor for his review.

2. The City has since learned that not all of the plaintiff's x-rays were obtained. In particular,

the x-ray taken at the emergency room and the x-rays taken by the orthopedic surgeon had not been obtained by plaintiff's counsel, and so they have not been available for the medical doctor to review.

3. The plaintiff's counsel has contacted the medical records departments to obtain these additional x-rays on an expedited basis.

4. Without these x-rays, the medical doctor cannot inform the City about the plaintiff's injuries.

5. The plaintiff's allegations and injury necessitate a review by a medical doctor of all of the plaintiff's available medical information.  The plaintiff alleges that Officer Hamilton fractured her wrist when he arrested her on August 11, 2002, and that she sought medical care for her wrist on August 12, 2002 following her release from police custody. The plaintiff also had surgery performed on her wrist.

6. The plaintiff's counsel has assented to this extension.


For the above reasons, the City of Boston respectfully moves this Court until January 31, 2007 to obtain the additional x-rays and to designate a medical expert.

Respectfully submitted,

DEFENDANTS CITY OF BOSTON
AND CHRISTOPHER HAMILTON
William F. Sinnott
Corporation Counsel

By their attorneys,

/s/ L. Bostwick
_____
Elizabeth L. Bostwick BBO# 644498
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-2902

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to L.R. D. Mass. 7.1(A)(2), I hereby certify that I have communicated with Attorney Veronica White on January 4, 2007 concerning The City of Boston's Emergency Assented to Motion for Additional Time to Obtain All the Plaintiff's X-Rays and to Designate an Expert Witness, and she indicated that she would assent to this motion.

/s/ L. Bostwick
_____
Elizabeth L. Bostwick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11385 JLT

D'ANN McGILL
    <u>Plaintiff</u>

v.

CITY OF BOSTON and
CHRISTOPHER HAMILTON
    <u>Defendants</u>

<u>**DEFENDANT, CITY OF BOSTON and SERGEANT CHRISTOPHER
HAMILTON'S ASSENTED TO EMERGENCY MOTION FOR  ADDITIONAL
TIME TO OBTAIN ALL THE PLAINTIFF'S X-RAYS AND TO DESIGNATE
A MEDICAL EXPERT and FOR LEAVE TO SUBPOENA THESE RECORDS**</u>

The Defendant, City of Boston (the "City") and
Sergeant Christopher Hamilton, move this Honorable Court
for additional time until February 28, 2007, to obtain all
of the Plaintiff's x-rays and have them reviewed by a
medical doctor, and for leave to subpoena the records.

The City brings this motion with the assent of the
Plaintiff.  Counsel for the City has learned that not all
of the Plaintiff's x-rays have been obtained and that the
Plaintiff's counsel has so far been unable to locate them.

In support of this request, the City and Hamilton state:

1. On December 22, 2006, the City obtained what it
   thought was a complete copy of the Plaintiff x-rays
   and MRI's from the Plaintiff and delivered these
   documents to a physician for review.

2. The City has since learned that only the Plaintiff's MRI records were obtained. X-rays taken at the emergency room and taken by an orthopedic surgeon were not produced. Accordingly, these records have not been reviewed by a physician.

3. In an effort to work cooperatively with the Plaintiff's attorney, the Defendants have agreed to subpoena the missing x-ray records directly from the Plaintiff's medical providers. See Affidavit of Elizabeth L. Bostwick, ¶ 2. Plaintiff's counsel has represented to the Defendants that she sent the Plaintiff the releases in order to obtain the missing x-rays on January 18, 2007. Id.

4. As of January 25, 2007, these releases had not yet been obtained, and Plaintiff's counsel's efforts to obtain the x-rays have not been successful. See Affidavit of Elizabeth L. Bostwick, ¶ 4.

5. Plaintiff's counsel has informed the Defendants that she will be out of the office from January 26, 2007 through February 10, 2007 on vacation. See Affidavit of Elizabeth L. Bostwick, ¶5.

6. The Plaintiff's allegations and injury necessitate a review by a medical doctor of all of the Plaintiff's available medical information. The Plaintiff alleges that Officer Hamilton fractured her wrist when he arrested her on August 11, 2002, and that she sought medical care for her wrist on August 12, 2002 following her release from police custody. The Plaintiff also had surgery performed on her wrist.

7. If this motion is not allowed the Defendants will be prejudiced because without the missing x-rays, the reviewing physician will not be able to fully assess the Plaintiff's injuries.

8. Plaintiff's counsel has assented to this extension.

9. No Party will be prejudiced by the allowance of this motion.

For the above reasons, the Defendants respectfully move this Honorable Court until February 28, 2007 to obtain the missing x-rays and to designate a medical expert.

Respectfully submitted,

DEFENDANTS CITY OF BOSTON
AND CHRISTOPHER HAMILTON
William F. Sinnott
Corporation Counsel

By their attorneys,

/s/ L. Bostwick
_____
Elizabeth L. Bostwick BBO# 644498
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-2902

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

Pursuant to L.R. D. Mass. 7.1(A)(2), I hereby certify that I have communicated with Attorney Veronica White on January 25, 2007 concerning The City of Boston's Emergency Assented to Motion for Additional Time to Obtain All the Plaintiff's X-Rays and to Designate an Expert Witness and Leave to Subpoena These Records, and she indicated that she would assent to this motion.

/s/ L. Bostwick
_____
Elizabeth L. Bostwick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11385 JLT

D'ANN McGILL
        _Plaintiff_

v.

CITY OF BOSTON and
CHRISTOPHER HAMILTON
        _Defendants_

**AFFIDAVIT OF ELIZABETH L. BOSTWICK**

1. My name is Elizabeth L. Bostwick.  I represent the City of Boston and Sergeant Hamilton in the above case.

2. I spoke with Attorney Veronica White who informed me that to date her efforts to obtain the plaintiff's x-rays have been fruitless.  In another effort to obtain these records, I asked that the defendants be permitted to subpoena these records directly from the medical care providers. Attorney White assented to this idea.

3. I sent the medical releases to Attorney White on or about January 18, 2007 via facsimile.

4. I spoke with Attorney White on Friday, January 25, 2007 about the outstanding x-rays of the plaintiff. She told me that she would assent to allowing the defendants another thirty (30) days to try to obtain these records.

5. Attorney White also informed me that her client had not received the medical releases that she sent to her client via mail on or about January 18, 2007. Attorney White authorized me to have this office send another set of releases directly to the plaintiff as she (Attorney White) was going to be

out of the country for two weeks until February 10, 2007.

6. I left Attorney Kerner a telephone message on January 29, 2007 about this motion, the issues raised by the defendants' summary judgment motion, and other issues in the case. I have not heard from Attorney Kerner.

Signed under the pains and penalties this 30th day of January 2007.

/s/ L. Bostwick

_____

Elizabeth L. Bostwick



# CITY OF BOSTON
# LAW DEPARTMENT

City Hall, Room 615
Boston, MA 02201

THOMAS M. MENINO
*Mayor*

WILLIAM F. SINNOTT
*Corporation Counsel*

February 21, 2007

**<u>VIA Facsimile and First Class Mail</u>**
Veronica J. White, Esq.
Law Office of Veronica J. White
101 Tremont Street, Suite 800
Boston, MA 02108

Re:     <u>D'Ann McGill v. City of Boston and Christopher Hamilton,</u>
        U.S.D.C. Docket No.  05 CV 11385 JLT

Dear Attorney White:

I am writing to inform you that after reviewing the three copies of X-rays that were picked up from your office yesterday there are three sets of X-rays that are still missing.  Based on our review of the medical records you have still not produced any of the sets of X-rays that were taken closer in time to the alleged incident.  This includes X-rays taken on August 12, 2002, August 14, 2002, and September 25, 2002.

We have reason to believe that some time ago the Plaintiff signed at least a portion of her own X-rays out and never returned them.  If this proves to be the case, and the Plaintiff does not produce the missing X-rays by Monday, February 26, 2007, the Defendants will file a motion to compel or in the alternative a motion to exclude any evidence of a fracture to the Plaintiff's wrist based on a spoliation theory.

If you have any questions or concerns please contact me.

Sincerely,

Bernard D. Posner
Assistant Corporation Counsel
(617) 635-4046

cc: Thomas Kerner, Esq. (VIA Facsimile and First Class Mail)

TEL.: (617) 635-4034 FAX: (617) 635-3199



HALLMARK HEALTH SYSTEM

_____ LAWRENCE MEMORIAL HOSP., MED REC DEPT., 170 GOVERNORS AVE, MEDFORD MA 02155
_____ MELROSE WAKEFIELD HOSP., MED REC DEPT.,  585 LEBANON ST, MELROSE MA 02176
_____ THE MALDEN MEDICAL CENTER, MED REC DEPT., 100 HOSPITAL RD, MALDEN MA 02148


DATE:  02/20/07

          CITY OF BOSTON LAW DEPT
          CITY HALL, ROOM 615
          ELIZABETH BOSTWICK,ESQ
          BOSTON, MA 02201

Dear CITY OF BOSTON LAW DEPT:

RE:    H0198730 D'ANN MCGILL

With regard to your recent request for information on the above named
individual, we are unable to process the request because:

_____  We are returning your request for more specific information which may
       help us to locate the requested record:
       _____ Date of Birth_____
       _____ Dates of Service_____
       _____ Social Security #_____
       _____ Your Last Name (please print)_____
       _____ Other/Maiden Name of Patient_____

_____  We require the patient's current authorization before we can release
       the record to you.

_____  An authorization must be signed and dated by the legal
       guardian (in the case of a minor),  or a person so designated by law,
       ie: Executor/Administrator of the Estate, with proof of such appointment.
       along with a death certificate.

_____  We are returning your request because guardianship papers are needed.

_____  We are returning your request because the the enclosed authorization needs
       to be completed/signed and returned to us.

_____  We are returning your request because we have no record that the above
       mentioned patient was seen at this hospital.

_____  We are returning your request because the above referenced patient was
       not seen at this facility between the dates requested.

_____  Regretfully, we are unable to locate this record but will continue the search.

_____  We are returning this request because it does not include all required
       elements.  We have enclosed Hallmark Health's Authorization form and will
       process your request upon receipt.

✓      Other There are no films available on D'Ann McGill.
Sincerely, She signed a form to pick up her films; she filled
       out the form on 8-13-2002 and picked up the
       film on 8-14-2002. Jane in the radiology depart-
Release of Information Coordinator - HALLMARK HEALTH SYSTEM - MEDICAL RECORDS ment stated to
(LMH) 781-306-6560, 781-306-6149; (MWH) 781-979-3215, 781-979-3213 me that she never
                                                    returned the film.

          Keeper of Records, Donna Bongiovanni 2-20-2007

LAWRENCE MEMORIAL HOSPITAL OF MEDFORD
170 Governors Avenue
Medford, MA 02155

## FILM RELEASE AUTHORIZATION FORM

DATE: 8-13-02

pick-up
8-14-02

NAME: Mc Gill, Dann

DATE OF BIRTH: 4-30-55

This is to authorize Lawrence Memorial Hospital/Radiology Department to release to

_____

(Facility Name/Physician Name - Address)

the radiographic films that you possess relative to my contact with you.

Films required:

WRist                    HO198730

_____

Patient Signature (or responsible party)

_____
Witness                          X-104

**ORTHOPEDIC SURGERY, INC.**

ADMINISTRATIVE OFFICE
ONE CITY HALL PLAZA
MELROSE, MASSACHUSETTS 02176
TELEPHONE (781) 662-2460
FAX (781) 662-2149
EMAIL: OSIMEL@CS.COM

DENIS P.A. BYRNE, M.D.
CHRISTIAN T. ANDERSEN, M.D.
WILLIAM J. DOHERTY, M.D.
BARRY T. BICKLEY, M.D.
ABRAHAM T. SHURLAND, M.D.

2-20-07

The initial xray of 9-25-02
Cannot be located.

Carol Boyle
Keeper of Records

**ORTHOPEDIC SURGERY, INC.**

ADMINISTRATIVE OFFICE
ONE CITY HALL PLAZA
MELROSE, MASSACHUSETTS 02176
TELEPHONE (781) 662-2460
FAX (781) 662-2149
EMAIL: OSIMEL@CS.COM

DENIS P.A. BYRNE, M.D.
CHRISTIAN T. ANDERSEN, M.D.
WILLIAM J. DOHERTY, M.D.
BARRY T. BICKLEY, M.D.
ABRAHAM T. SHURLAND, M.D.

DATE: 2-20-07

Elizabeth Bostwick
City of Boston Law Dept.
Room 615- City Hall
Boston, MA 02201

RE: D Ann McGill

DX: Copies X rays

For services rendered on:

| | | |
|---|---|---|
| 3 | copies xrays | $ |
| | postage | $ |
| | Packaging | $ |
| | | $ |
| | | $ |
| | Balance Due | $ 10.00 |

Please make payable to OST
Attn: Medical Records



**ORTHOPAEDIC ASSOCIATES, INC.**

ANTHONY E. WEBBER, M.D.
FULTON C. KORNACK, M.D.
JOSEPH S. BARR, JR., M.D.

AFFILIATED WITH:

HARVARD MEDICAL SCHOOL
MASSACHUSETTS GENERAL HOSPITAL
FAULKNER HOSPITAL
CHILDRENS HOSPITAL

February 25, 2007

To:    Attorney Bernard D. Posner
       Assistant Corporation Counsel
       City Hall, Room 615
       Boston, MA 02201

Re:    McGill v City of Boston
Our File #: 199

Dear Attorney Posner,

I have reviewed the records you sent me in this matter. These include records from the Lawrence Memorial Hospital, records from Dr. William J. Doherty, Occupational Therapy records, the deposition of police officer Christopher Hamilton, and the deposition of the plaintiff in this case, D'Ann McGill. In addition, I reviewed the wrist X-rays taken by Dr. Doherty on October 23, November 13, and December 11, 2002. I also reviewed the MRI scan done on December 21, 2002. I have not been able to review the actual X-rays done at Lawrence Memorial on August 12, 2002 and the films done by Dr. Doherty on September 25, 2002 and June 30, 2004.

D'Ann McGill was arrested at approximately 2 a.m. on August 11, 2002 by Officer Christopher Hamilton for prostitution. In her deposition, she admitted to being arrested in multiple cities in the past, including 3 years in prison in 1986 in Atlantic City, also being imprisoned in Memphis and Atlanta. Officer Hamilton applied handcuffs and testified in his deposition that they were "double locked" to prevent them from being tightened once they were applied. Officer. Hamilton took D'Ann McGill to station A-1 where she was booked and subsequently taken to D-4 for the night. On August 12 she made bail of $250 which was paid by an associate, "John". She then took a taxi home and subsequently went to Lawrence Memorial Hospital where she was examined and x-rays were taken. The opinion of the physician there was that D'Ann McGill was suffering from a contusion and sprain of her right wrist. A splint, ice packs, and Percocet were prescribed. The official reading of the x-ray by Dr. Joseph C. Sequeria was that there was an "ill-defined lucency in the distal radial metaphysis and an incomplete nondisplaced fracture cannot be ruled out".

On the following day, Ms.McGill was called by the hospital and told her arm was broken and she then sought treatment with Dr. William Doherty. She saw Dr. Doherty for the first time on August 14, 2002. At that time Dr. Doherty noted that her right wrist was in a bulky splint. The skin was normal to inspection. He noted that was just scant swelling of the wrist with no deformities. Ms. McGill held her fingers flexed into the palm and was able to extend them with

ZERO EMERSON PLACE
SUITE 120
BOSTON, MA 02114
TEL. (617) 726-3563
FAX (617) 742-7849

1

THE FAULKNER HOSPITAL
1153 CENTRE STREET
JAMAICA PLAIN, MA 02130
TEL. (617) 522-1734
FAX (617) 522-8325

encouragement. The was no swelling or bruising into the fingers. Capillary refill and light touch sensibility were normal. Dr. Doherty noted that x-rays of the wrist had been done and he reviewed them. He commented that the x-rays showed a nondisplaced fracture of the radial styloid. There was no evidence of intercarpal malalignment or articular step-off. He felt that Ms. McGill would require a splint on the wrist for 4 to 6 weeks. Dr. Doherty next saw Ms. McGill on September 25. At that time she was approximately 6 weeks following the injury. She complained of a burning sensation in the radial side of her right wrist. She was still wearing the wrist splint. There was some swelling of the hand distal to the splint. Dr. Doherty removed the splint. The skin of her wrist appeared normal with normal capillary refill and normal light touch sensation. X-rays done at that time showed a healed fracture of the distal radius through the radial styloid. Dr. Doherty mentioned that Ms. McGill had considerable stiffness and swelling of the hand with a conversion reaction. [The term "conversion reaction" was first coined by Sigmund Freud meaning conversion of a repressed emotional problem to a physiological form. This term is now classified as a somatoform disorder and may be a source of "secondary gain" to attract attention, sympathy, or support.].

On October 23, Dr. Doherty took another x-ray which showed healing and no other change. He noted that Ms. McGill continued to have an excessive swelling response of her hand with residual stiffness. He felt she needed to continue working with the occupational therapist. The next visit was on November 13 and at that time Ms. McGill said she noted improvement in the hand. She was still having some wrist pain in the dorsum of the wrist. Dr. Doherty found minimal swelling in the hand and none in the wrist. She had full range of motion of her fingers and the wrist. An x-ray showed a healed fracture, otherwise unremarkable. Dr. Doherty mentioned the possibility of a partial injury to the scapho-lunate ligament. At the next visit on December 11, Dr. Doherty noted that Ms. McGill continued to complain of intermittent, sharp, episodic pain in her right wrist. She was wearing a splint at night, but not during the day. On examination she had some tenderness over the dorsum of the wrist, no deformity or swelling. At that time Dr. Doherty ordered an MRI scan of the wrist.

Ms. McGill returned again on January 8 at which time Dr. Doherty noted only slight tenderness over the dorsum of her wrist. The MRI scan had been done on December 21, 2002 and showed some signal change within the triangular fibrocartilage complex at the distal radial ulnar joint. He felt that was presumptive evidence of a tear of the cartilage. There was no evidence of any intercarpal ligament abnormality. I would agree with these findings. There was no fluid within the mid carpal joint. At that time Dr. Doherty recommended an injection of lidocaine and Depo Medrol and that was done. The next visit of Ms. McGill to Dr. Doherty was on March 5, 2003. She noted that the cortisone injection had given her some improvement in the right wrist pain for 2 to 3 weeks. On the day of that visit she was still wearing a splint on her right wrist. A second injection was done by Dr. Doherty at that time. She returned again on March 26 stating that there had been some improvement in the right wrist pain for about a week after the injection. Examination of that time showed only some tenderness at the ulnar aspect of the wrist distal to the head of the ulnar bone. The possibility of arthroscopy of the wrist was discussed and agreed upon between Dr. Doherty and Ms. McGill. The arthroscopic surgery was carried out on April 24, 2003 at the Lawrence Memorial Hospital. A tear of the triangular fibrocartilage complex was found at the radial attachment and was debrided along with chondroplasty. On a postoperative visit on April 30, Ms. McGill noted some burning pain in her wrist. She appeared to be healing well.

The next visit was on May 28, 2003. The wrist pain had diminished and improvement of range of motion of the wrist was noted. Dr. Doherty asked that she discontinue using the splint. The next visit was on July 2, 2003 and Dr. Doherty noted that Ms. McGill had normal alignment of the wrist without any swelling and she was able to make a fist and fully extend her fingers. Dr. Doherty discharged her at that time to be followed as necessary in the future. A final visit to Dr. Doherty was made by Ms. McGill on June 30, 2004. At that time she told Dr. Doherty she was being seen at the request of her attorney. She stated that she still had a burning sensation over the top of her wrist and her hand would not relax. She denied numbness or tingling. Dr. Doherty noted that her right hand was held in an unusual posture with the fingers flexed at the PIP and DIP joints with the MP joints extended period was no deformity swelling or skin abnormality. X-ray was unremarkable. Dr. Doherty's conclusion was that Ms. McGill had wrist pain with no obvious source. He felt her complaints of inability to relax her hand were "non-organic" (without a physical basis). Dr. Doherty encouraged Ms. McGill to use the hand as much as possible and there were no further records of him seeing her after June 30, 2004.

Thus there is a claim by Ms. McGill that the handcuffs caused a fracture of her right wrist. Officer Hamilton noted in his deposition that the handcuffs were "double locked" to prevent them from being tightened inadvertently. I was able to review the x-rays taken by Dr. Doherty on October 23, November 13, and December 11 all in 2002. At the time of this report, the x-rays of August 12, 2002 done at the Lawrence Memorial Hospital have not been made available for my review. It is my opinion, to a reasonable degree of medical certainty, that the x-rays I reviewed of October 23, November 13, and December 11 of 2002 did not show any evidence of a past fracture or healing fracture in Ms. McGill's wrist. A fracture of the wrist most often occurs with violent trauma such as a fall. There was no evidence of any violent trauma occurring to Ms. McGill either during the arrest or afterwards. If a prisoner struggled violently against handcuffs it is possible that a strain or sprain of the ligaments could result, but an actual fracture would be extremely unlikely.

Again, it is my opinion, to a reasonable degree of medical certainty, that Ms. McGill did not suffer a fracture of her right wrist caused by any action of Officer Christopher Hamilton on August 11, 2002.

I reserve the right to supplement this report if and when the original x-rays of August 12, 2002 are made available for my review.

If there are any questions about the above, please let me know.

Yours Sincerely,

Joseph S. Barr, Jr., MD

# CURRICULUM VITAE

DATE PREPARED:         July, 2006

NAME:                  **Joseph Seaton Barr, Jr. MD**

ADDRESS:               0 Emerson Place, Suite 120
                       Boston, MA 02114
                       Telephone: 617-726-3563

HOME ADDRESS:          205 Edgewater Drive
                       Needham, MA  02492

E-MAIL                 jbarr@Partners.org        FAX: 617-742-7849

DATE OF BIRTH:         November 20, 1934

PLACE OF BIRTH:        Boston, MA

EDUCATION:

| | | |
|---|---|---|
| 1952 | | Milton Academy, Milton, MA, Cum Laude |
| 1956 | A.B. | Princeton University, Princeton, NJ |
| 1960 | M.D. | Harvard Medical School, Boston, MA |

POSTDOCTORAL TRAINING:

Internship and Residencies:

| | |
|---|---|
| 1960-1961 | Surgical Internship, Peter Bent Brigham Hospital Boston, MA |
| 1961-1962 | Assistant Surgical Residency, Children's Hospital Boston and West Roxbury Veterans Administration Hospital, West Roxbury, MA |
| 1962-1964 | Assistant Surgeon, United States Navy Station Hospital, Taipei, Taiwan |
| 1965-1968 | Harvard combined Orthopaedic Program. Children's Hospital, Boston and Massachusetts General Hospital, Boston, MA |
| 1968 Jan. – June | Teaching Fellow in Orthopaedic Surgery  Harvard Medical School, Boston, MA |

1

Joseph Seaton Barr, Jr., MD

LICENSURE AND CERTIFICATION:

| | |
|---|---|
| 1962 | Massachusetts License Registration No. 27088 |
| 1970 | American Board of Orthopaedic Surgery |
| 1976 | Vermont License No. 5665 |
| 1978-2001 | New Hampshire License No. 5851 |

ACADEMIC APPOINTMENTS

| | |
|---|---|
| 1968-1969 | Instructor in Orthopaedic Surgery, Harvard Medical School |
| 1969-1979 | Clinical Instructor in Orthopaedic Surgery, Harvard Medical School |
| 1979- | Assistant Clinical Professor of Orthopaedic Surgery, Harvard Medical School |

HOSPITAL APPOINTMENTS

| | |
|---|---|
| 1968-1984 | Associate Orthopaedic Surgeon and Active Staff Massachusetts General Hospital, Boston, MA |
| 1968- | Active Staff, Faulkner Hospital, Jamaica Plain, MA |
| 1969-1980 | Active Staff, New England Baptist Hospital, Boston, MA |
| 1981-1990 | Active Staff, New England Deaconess Hospital, Boston, MA |
| 1970-1982 | Consultant, Pondville Hospital, Norfolk, MA |
| 1970-1985 | Consultant, Falmouth Hospital, Falmouth, MA |
| 1971-1980 | Consultant, Gardner Crippled Children's Clinic, Gardner, MA |
| 1980-1994 | Consultant, Massachusetts Hospital School, Canton, MA |
| 1985-1994 | Associate in Orthopaedics, Spaulding Rehabilitation Hospital, Boston, MA |
| 1995 - | Visiting Orthopaedic Surgeon, Massachusetts General Hospital Boston, MA |

HOSPITAL AND HEALTH CARE ORGANIZATION SERVICE RESPONSIBILITIES:

| | |
|---|---|
| 1979-1984 | Record Room Committee, Massachusetts General Hospital |
| 1979-1985 | Staff Associates Executive Committee, Massachusetts General Hospital |
| 1983-1984 | Executive Committee, Faulkner Hospital |
| 1984-1985 | Secretary/Treasurer, Medical Staff, Faulkner Hospital |
| 1985-1987 | Vice President, Medical Staff, Faulkner Hospital |
| 1985-1987 | Chairman, Massachusetts General Hospital Staff Associate Subcommittee on Malpractice |

2

Joseph Seaton Barr, Jr., MD

| | |
|---|---|
| 1986-1987 | Member, Quality Assurance Board, Massachusetts General Hospital |
| 1987-1992 | Patient Care Assessment Executive Committee, Massachusetts General Hospital |
| 1985-1987 | Chairman, Utilization Review Committee, Faulkner Hospital |
| 1987-1989 | President, Medical Staff, Faulkner Hospital |
| 1987-1989 | Chairman, Quality Assurance Committee, Faulkner Hospital |
| 1989-1991 | Chairman, By-Laws Committee, Faulkner Hospital |
| 1989-1991 | Chairman, Committee on Health Status of the Medical Staff Faulkner Hospital |
| 1998- | Member, Operating Room Committee, Faulkner Hospital |

MAJOR ADMINISTRATIVE RESPONSIBILITIES:

| | |
|---|---|
| 1972- | Medical Director, Physical and Occupational Therapy Department, Faulkner Hospital |
| 1975-1998 | Chief, Amputation Clinic, Massachusetts General Hospital |
| 1976-1985 | Research Affiliate, Department of Medical Engineering, Massachusetts Institute of Technology |
| 1987-1989 | President, Medical Staff, Faulkner Hospital |
| 1989-2006 | Chief, Division of Orthopaedic Surgery, Faulkner Hospital |

MAJOR COMMITTEE ASSIGNMENTS:

Medical School:

| | |
|---|---|
| 1975- | Class Agent, Class of 1960, Harvard Medical School |
| 1980-1981 | Vice President, Harvard Medical School Alumni Association |

Regional:

| | |
|---|---|
| 1981-1985 | Secretary, Boston Orthopaedic Club |
| 1985-1987 | President, Boston Orthopaedic Club |

Joseph Seaton Barr, Jr., MD

AFFILIATED INSTITUTIONS:

Massachusetts General Hospital:

| | |
|---|---|
| 1979-1984 | Record Room Committee |
| 1979-1985 | Staff Associates Executive Committee |
| 1985-1987 | Chairman, Staff Associates Subcommittee on Malpractice |
| 1986-1987 | Member, Quality Assurance Board |
| 1987-1992 | Patient Care Assessment Executive Committee |

Faulkner Hospital:

| | |
|---|---|
| 1983-1984 | Executive Committee |
| 1984-1985 | Secretary/Treasurer Medical Staff |
| 1985-1987 | Vice President, Medical Staff |
| 1985-1987 | Chairman, Utilization Review Committee |
| 1987-1989 | President, Medical Staff |
| 1987-1989 | Chairman, Quality Assurance Committee |
| 1989-1991 | Chairman, By-Laws Committee |
| 1989-1991 | Chairman, Committee on Health Status of the Medical Staff |
| 1998- | Operating Room Committee |

NATIONAL

American Academy of Orthopaedic Surgeons:

| | |
|---|---|
| 1972-1978 | Committee on Rehabilitation |
| 1978-1979 | Program Committee |
| 1979-1985 | Summer Institute Committee |
| 1984-1990 | Committee on the Spine |
| 1985-1990 | Instructional Course Committee, Chairman 1988 |
| 1986-1988 | Coordinating Committee for the Annual Meeting |
| 1990-1992 | Council on Orthopaedic Resources, Secretary |
| 1990-1996 | Committee on Educational Programming, Chairman 1992-1996 |
| 1991 | Chairman, AAOS Workshop, "Lasers in Orthopaedic Surgery" |
| 1992-1996 | Council on Education |
| 2004- | 75th Anniversary Project Team |

OTHER NATIONAL

| | |
|---|---|
| 1983-1989 | Trustee, Orthopaedic Research and Education Foundation |
| 1985 | Chairman, Program Committee, Cervical Spine Research Society |
| 1985- | Examiner, American Board of Orthopaedic Surgery |
| 1986-1991 | Treasurer, Cervical Spine Research Society |

Joseph Seaton Barr, Jr., MD

| | |
|---|---|
| 1987-2003 | Member, Field Test Task Force Group, American Board of OrthopaedicSurgery. |
| 1988 | Chairman, Program Committee, Twentieth Century Orthopaedic Association |
| 1990- | Medical Director, Orthopaedic Research and Education Foundation |
| 1990-1992 | Orthopaedic Consultant, Graduate Medical Education, National Advisory Council Study on Manpower |
| 1991-1992 | President-Elect, Cervical Spine Research Society |
| 1992-1993 | President, Cervical Spine Research Society |
| 1994-1998 | Treasurer, Twentieth Century Orthopaedic Association |

PROFESSIONAL SOCIETIES

| | |
|---|---|
| 1972- | American Academy of Orthopaedic Surgeons |
| 1978- | Cervical Spine Research Society |
| 1980- | American Orthopaedic Association |
| 1983- | Twentieth Century Orthopaedic Association |
| 1987-1997 | Northeast Medical Association |

COMMUNITY SERVICE RELATED TO PROFESSIONAL WORK

| | |
|---|---|
| 1997- | Corporate Member of the Board, Woods Hole Oceanographic Institute, Woods Hole, MA |
| 2004- | Warden, Christ Church, Needham, MA |

EDITORIAL BOARDS

1990    Associate, Editorial Board, SPINE

AWARDS AND HONORS

1985    President, Boston Orthopaedic Club
1993    President, Cervical Spine Research Society

RESEARCH, TEACHING, AND CLINICAL CONTRIBUTIONS
A. Not applicable
B. Not applicable
C. Not applicable
D. Report of Teaching
1999    1) Lecturer and Co-chairman, Boston Prosthetics and Orthotics Course, March 11-12, 1999
2) Lecturer, "Medical Preparation" Marion-Bermuda Race Symposium, Massachusetts Institute of Technology, March 27,

Joseph Seaton Barr, Jr., MD

    3) Lecturer, Lower Extremity Amputations, Massachusetts General Hospital Physical Therapy Students, September 14, 1999
    4) Lecturer, Lower Extremity Amputations, Simmons College Physical Therapy
    5) Faculty and Lecturer, "Workers Compensation Case Management: A Multi-Disciplinary Perspective", AAOS CME Course, Chicago, IL November 12-14, 1999.

2000  1) Lecturer and Co-chairman, Boston Prosthetics and Orthotics Course, March 30-31, 2000.
    2) Examiner, American Board of Orthopaedic Surgery (ABOS) Oral Examinations. Chicago, IL July 11-13, 2000.
    3) Lecturer, "Lower Extremity Amputations", Massachusetts General Hospital Institute of Health Professions, September 18, 2000.
    4) Faculty Member and Lecturer, "Functional Restoration", AAOS CME Course, "Occupational Orthopaedics", Baltimore, MD. November 10-12, 2000
    5) Lecturer, "Lower Extremity Amputations", Simmons College Physical Therapy Department, December 5, 2000.

2001  1) Lecturer and Co-chairman, Boston Prosthetics and Orthotics Course, May 17-18, 2001
    2) Lecturer, "Lower Extremity Amputations", Massachusetts General Hospital Institutes of Health Professions, September 12, 2001.
    3) Co-chairman, AAOS, CME Course on "Occupational Orthopaedics", Las Vegas, NV, November 2-4, 2001. Lecturer, "Low Back Pain in the Workplace"

2002  1) Speaker, "Report on The OREF" Massachusetts Orthopaedic Association Annual Meeting,    April 10, 2002.
    2) Lecturer, "Return To Work Issues: Back Pain", AAOS CME Course on "Occupational Orthopaedics", Chicago, IL, November 1-3,2002.

2003  1) Lecturer, "Medical Preparations" Marion-Bermuda Race Symposium, MIT Cambridge, MA. March 22, 2003.
    2) Speaker, "Report on the OREF", MA Ortho Assn Meeting, April 15, 2003 .
    3) Lecturer, "Lower Extremity Amputations" Simmons College Physical Therapy, October 20, 2003.
    4) Local Host and Lecturer, "Return to Work Issues After Low Back Pain", AAOS CME Course on "Occupational Orthopaedics", Cambridge, MA  October 31- November 2, 2003

2004  1) Lecturer "Lower Extremity Amputations" MGH Institute of Health Professions. January 16, 2004.
    2) Speaker, Report on the OREF", MA Ortho Assn Meeting, April 21, 2004.
    4) Examiner, ABOS Oral Examinations. Chicago, IL July 12-15, 2004.

6

Joseph Seaton Barr, Jr. MD

     5) Lecturer, "Lower Extremity Amputations" Simmons College Physical Therapy, October 6, 2004

     6) Lecturer, "Return to Work by Treatment Algorithms and Consensus Documents for Spine" AAOS CME Course on "Occupational Orthopaedics", Costa Mesa, CA November 5-7, 2004.

     7) Local Host, Cervical Spine Research Society Annual Meeting, Boston, MA December 8-11, 2004.

2005  1) Lecturer, "Lower Extremity Amputations, MGH Institute of Health Professions, January 14, 2005.

     2) Lecturer, "Upper Extremity Amputations" CORE Curriculum MGH, February, 16, 2005.

     3) Lecturer, "Medical Preparations" Marion-Bermuda Safety at Sea Symposium, MIT March 26, 2005

     4) Speaker, "OREF Report" MA Ortho Assn, Waltham, April 13, 2005

     5) Lecturer, "Return to Work by Treatment Algorithms and Consensus Documents for Spine" and "Chronic Pain and its Management" AAOS CME Course on "Occupational Orthopaedics" Las Vegas, NV, October 28, 2005.

     6) Speaker at the Dedication of the William R. MacAusland, Jr. Medical Annex, Stratton Mountain, VT December 9, 2005

2006  1) Lecturer, "Lower Extremity Amputations" Simmons College Physical Therapy April 6, 2006.

     2) Speaker, "OREF Report" MA Ortho Assn, Waltham, April 26, 2006

REPORT OF CLINICAL ACTIVITIES:

     1) The clinical practice of Orthopaedic Surgery with emphasis on adult reconstruction (total hip and knee replacement) and spine surgery. Sites of practice: Massachusetts General Hospital, Faulkner Hospital, Dedham Medical Associates.

     2) Patient Load: Approximately 100 outpatient visits a week.
                   Approximately 150 major operative cases a year.

     3) Not applicable

     4) Not applicable

CURRENT ACTIVITIES

I stopped doing surgery on 7/1/05. I remain in full time office practice seeing patients, doing consultations, IMEs (independent medical evaluations) and medico-legal review and consultation.

Joseph Seaton. Barr, Jr. MD

BIBLIORAPHY:

Original Reports:

1) Hoffman, JF Eden, M. Barr, JS, Jr., and Bedell, RHS. The Hemolytic Volume of Human Erythrocytes. J. Cell Comp. Physiol., 1968; 51:405.

2) Kinney, JM, Goldwyn, RM, Barr, JS, Jr., and Moore, FD. Loss of the Entire Jejunum and Ileum and the Ascending Colon. J. Am. Med. Assoc., 1962, 179:529

3) Barr, JS, Jr., Experiences with a Sliding Nail in Femoral Neck Fractures. Clin. Ortho. Rel. Research 1973; 92:63.

4) Warren, R. James, RC, Banks, HH, Barr, JS, Jr., Bonner, CD and Mooney. MV. The Boston Interhospital Amputation Study. Arch. Surg. 1973; MVI. 107:861.

5) Barr, JS, Jr., Diagnosis and Treatment of Infections Following Internal Fixation of Hip Fractures, Ortho. Clin. North. Am. 1974; 5:847

6) Barr, JS, Jr., Presidential Address, "The Third Decade: Cervical Spine Research Society," Spine 1994; 19:pp2254-2257

Reviews

1) Barr, JS, Jr., Orthopaedic Consultant. Dorland's Illustrated Medical Dictionary, 25th Edition. W. B. Saunders, Philadelphia 1974.

2) Barr, JS, Jr., Contributor, Chapters 20, 21 and 31. In: Cave, E. Burke, J. and Boyd, R, Eds., Trauma Management. Yearbook Medical Publishers, Chicago 1974

3) Barr, JS, Jr., Contributor, Chapter on Orthopaedic Emergencies. In: Wilkins, E. Moncure, A, and Dineen, J, Eds., Textbook of Emergency Medicine. Williams and Wilkins, Baltimore 1978.

4) Barr, JS, Jr., Contributor, Chapter on Total Joint Replacement. In: A Comparison to the Life Sciences. Integrated Medicine, Vol 1, SG Day, MD. Van Nostrand Reinhold Co. New York 1981.

5) Barr, JS, Jr., Contributor, (With Pierce, DS), Chapter on the Use of Halo Orthosis, pp. 189-196 and Chapter on the Skull and Upper Cervical Spine, pp. 196-205, In: The Cervical Spine. J.B. Lippincott Co., Philadelphia, 1983.

Joseph S. Barr, Jr. MD

6) Barr, JS, Jr., Section 32, Hip and Femur: Trauma. In: Orthopaedic Knowledge Update I, Home Study Syllabus, pp. 287-296. American Academy of Orthopaedic Surgeons, Chicago, 1984.

7) Barr, JS, Jr., Editor, Patient Information Booklet: "Low Back Pain," American Academy of Orthopaedic Surgeons, Chicago 1986.

8) Barr, JS, Jr., Contributor (with Heros, RC, and Pierce, DS) Chapter on The Treatment of Spinal Trauma, pp. 512-532. In: Trauma of Management, Yearbook Medical Publishers Inc., Chicago, 1988.

9) Barr, JS, Jr., Editor, "Instructional Course Lectures," Volume 38, American Academy of Orthopaedic Surgeons, Park Ridge, IL 1989.

10) Barr, JS, Jr., Contributor (with Krag, MH, and Pierce, DS), Chapter on "Cranial Traction in the Halo Orthosis." Pages 299-311, and Contributor
(with Pierce, DS) Chapter on "Fractures and Dislocations at the Base of the Skull and Upper Cervical Spine," Pages 312-324 In: "The Cervical Spine", Second Edition, J.B. Lippincott Co., Philadelphia 1989.

11) Barr, JS, Jr., Contributor, Book Review on "Prosthetics and Orthotics" by Shurr, DG, Cook, TM, Appleton and Lange. 1990, Journal of Bone and Joint Surgery, volume 72-A: 955, 1990.

12) Barr, JS, Jr., Chapter "Skeletal Traction" pp 3-14 In: "The Cervical Spine, An Atlas of Surgical Procedures, J.B. Lippincott Co., Philadelphia 1994.

# TESTIMONY

## JOSEPH S. BARR, JR. MD

### 2002

Smith v Bell Atlantic  ADA case  Witness for the defense. Middlesex Superior
    Court  5/22/02.

### 2004

Blacker-Ginsberg  PI case  Witness for plaintiff.  Middlesex Sup Court

### 2005

Hess v Grober Med mal  Deposition for plaintiff 1/05  Florida

Sheryl Shannon  Med mal  Deposition for plaintiff.  Texas

### 2006

Shevchenko v Atlantic Beach  PI case  Deposition for plaintiff 6/06
    Florida

Shaw v Lange  Med mal  Deposition for plaintiff 12/29/06
    Connecticut

### 2007

Kodad v Baker  PI case  Deposition for defense. 1/17/07
    Boston

Call v Nichols  PI case  Deposition for defense 1/22/07
    Boston

Dolan v Romness  Med mal  Deposition for defense 2/27/07
    CT